OPINION OF THE COURT
Alexander, J.
In this, the first case to reach this court involving the recently enacted CPLR article 13-A, we are called upon to determine the reach of an action relating to “post-conviction forfeiture crimes” (CPLR 1311) and the extent to which provisional remedies are available against the assets of an individual who has been indicted but not convicted of a “post-convietian forfeiture crime” (CPLR 1310 [5]), where it is neither claimed nor demonstrated that such assets are "proceeds of a crime”, “substituted proceeds of a crime” or an "instrumentality of a crime” (CPLR 1310 [2], [3], [4]). If we determine that such assets can be reached, we must determine whether the procedural requirements of the statute comport with Federal constitutional due process.
In modifying and vacating the orders of attachment and a preliminary injunction issued by Special Term, a divided Appellate Division determined, as a matter of law, that the only assets of one not yet convicted of a “post-conviction forfeiture crime” that can be reached by provisional remedies are "proceeds of a crime”, “substituted proceeds of a crime” or “an instrumentality of a crime” and in so determining did not consider the factual issues raised on the appeal and cross appeal to that court or the constitutional issues raised by the defendants. The case is before us by leave of the Appellate Division on the certified question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?”
*215 For the reasons that follow, we reverse the order of the Appellate Division and answer the certified question in the negative.
I
Robert M. Morgenthau, the District Attorney of New York County (Morgenthau), as "claiming authority”[1] has commenced this civil forfeiture action pursuant to CPLR article 13-A against Citisource, Inc., as a "non-criminal defendant” (CPLR 1310 [10]) and Marvin B. Kaplan, Stanley Friedman and various others, as "criminal defendants” (CPLR 1310 [9]) seeking to recover $4.49 million as the proceeds of a crime, the substituted proceeds of a crime or a money judgment equivalent in value to the proceeds or the substituted proceeds of a crime. Kaplan, Friedman and others have been indicted for various "post-conviction forfeiture crimes” (CPLR 1310 [9]), including violations of the Donnelly Act (General Business Law § 340), the Martin Act (General Business Law § 352-c [2], [5], [6]) as well as grand larceny (Penal Law § 155.35), bribery (Penal Law § 200.00), bribe receiving (Penal Law § 200.10) and conspiracy (Penal Law § 105.05).
Morgenthau obtained ex parte orders authorizing the attachment of $1,140,300 belonging to Kaplan and $615,000 belonging to Friedman and temporarily restraining the alienation of $400,000 in the "Desu Consulting & Leasing Co. Retirement Trust account”, of which Kaplan is allegedly a beneficiary and the sole trustee.[2] Within the required statutory time, Morgenthau moved to confirm the orders of attachment and for a preliminary injunction to prevent the transfer of the assets of the trust.
Defendants Friedman and Kaplan opposed Morgenthau’s motion and moved to vacate or modify the prior ex parte orders, arguing: (1) that they are "non-criminal defendants” since they have not been convicted of any crimes and as to them the forfeiture statute only authorizes the seizure of proceeds of a crime, substituted proceeds of a crime or the instrumentality of a crime and thus, the attachments and the *216 injunction, which concededly reach assets not shown to be connected to the alleged crimes, were unauthorized; (2) that in any event Morgenthau had not demonstrated that defendants’ assets would otherwise become unavailable; (3) that Morgenthau had not demonstrated the likelihood of success on the merits in the post-conviction forfeiture action; (4) that the Desu trust, which is allegedly an Employee Retirement Security Act (ERISA) trust, is immune from alienation under Federal law; (5) that the attachments had worked substantial hardships on the defendants; and (6) that the criminal forfeiture statute as interpreted by Morgenthau violated various constitutional safeguards.[3] Morgenthau then sought to increase the attachment against Friedman by an additional $135,000 because of an error by Friedman’s bank in its initial report as to the amount attached. In support of his motion to confirm the orders of attachment and for the preliminary injunction, Morgenthau argued that this civil forfeiture action was against putative "criminal defendants” (CPLR 1310 [9]) who were potentially liable for a money judgment in an amount equal to the proceeds of their crimes such that an attachment could be effected on more than just the proceeds of the crime, the substituted proceeds of a crime or the instrumentality of a crime. Additionally, Morgenthau argued that the evidence submitted sustained his burden of proof and satisfied the requirements for the issuance of provisional remedies in that there was a substantial probability of success on the issue of forfeiture, that the failure to enter the orders may result in the proceeds being unavailable and that the need to preserve the property outweighs the hardships to the defendants (CPLR 1312 [3]).
Special Term denied defendants’ motion to vacate or modify the attachments and the injunction and granted Morgenthau’s motion to confirm the attachments but limited them to the amounts of money already levied upon or restrained. Special Term also issued a preliminary injunction restraining any transfer of the assets of the Desu trust, except to permit their "reinvestment in like short-term federal obligations”. The court held that article 13-A authorized Morgenthau to attach any assets of the defendants, not just those that were traceable as proceeds of a crime, the substituted proceeds of a crime *217 or an instrumentality of a crime, because a money judgment could be obtained against defendants if they were eventually convicted of the crimes charged. The court further concluded that Morgenthau had satisfied his burden of establishing the statutorily required factors to authorize the granting of a provisional remedy.[4]
The Appellate Division modified and vacated the orders of attachment and the injunction against the alienation of the assets of the trust. The majority of the court interpreted the statute as not permitting the attachment or restraint of the assets of a defendant who has not been convicted, holding that only those assets of such a defendant that are proceeds of a crime, substituted proceeds of a crime, or an instrumentality of a crime may be attached, implicitly finding that a broader interpretation of the statute, such as that argued by the claiming authority here and adopted by Special Term, would render it constitutionally defective. In view of this determination the court did not review the factual determinations of Supreme Court as to the sufficiency'of the claiming authority’s proof nor did the court address the issue of whether the trust was immune from alienation under Federal law or the denial of Morgenthau’s request to increase the attachment. The case was remanded to Special Term for a hearing to determine, as to Friedman and Kaplan, the extent to which the attachments included proceeds or substituted proceeds of a crime. The dissenting Justice concluded that the. statute explicitly provided for provisional remedies in an action relating to "post-conviction forfeiture crimes” prior to a conviction "to prevent the dissipation of assets that would be subject to the judgment that may be entered in such an action” and that as so interpreted, the statute was neither unconstitutional on its face nor as applied (121 AD2d 353, 354 [Sandier, J., dissenting]).
II
The legislative purpose sought to be achieved through the enactment of CPLR article 13-A was "to take the profit out of crime” (1984 McKinney’s Session Laws of NY, at 3627-3628). To that end, the statute provides for the institution of an action which is civil, remedial and in personam in nature (CPLR 1311 [1]), by a "claiming authority” against a defen *218 dont to protect the claims of victims of crimes. As relevant to the issues presented here, the statute provides for actions against two types of defendants: "non-criminal” and "criminal”. In an action against "non-criminal defendants”, defined as "a person, other than a criminal defendant, who possesses an interest in the proceeds of a crime, the substituted proceeds of a crime or in an instrumentality of a crime” (CPLR 1310 [10]), recovery is limited to "the proceeds of a crime, substituted proceeds of a crime or an instrumentality of a crime” (see, CPLR 1311 [1]). An action against "criminal defendants” (CPLR 1310 [9]) however, can result in a judgment recovering "the proceeds of a crime, the substituted proceeds of a crime or an instrumentality of a crime or * * * a money judgment in an amount equivalent in value to the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, or an instrumentality of a crime” (CPLR 1311 [1]; emphasis supplied).[5] A "criminal defendant” (CPLR 1310 [9] [a]) is a person who, as relevant here, has been convicted of a "post-conviction forfeiture crime” defined as any felony found in the Penal Law or any other chapter of the consolidated laws of the State (CPLR 1310 [5]).[6]
The provisional remedies of attachment, injunction, receivership and notice of pendency are available in all actions under article 13-A (see, CPLR 1312). In order for the court to grant a provisional remedy, it must determine that there is a substantial probability that the claiming authority will prevail on the issue of forfeiture, that failure to enter the order may result in the property being destroyed, removed from the jurisdiction of the court or otherwise unavailable for forfeiture and that the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order may operate (CPLR 1312 [3]).
Ill
A
As indicated above, the primary dispute here concerns the *219 reach of an action relating to "post-conviction forfeiture crimes” and the availability of provisional remedies against these defendants. The conclusion of the Appellate Division that the statute does not authorize the pre-conviction seizure of defendants’ assets not traceable to the alleged crimes because they have yet to be convicted of a "post-conviction forfeiture crime”, and limiting the reach of a provisional remedy to the traceable proceeds of a crime, the substituted proceeds of a crime or the instrumentality of a crime, misinterprets the plain language and clear meaning of the statute.
The fact that defendants have not been convicted of the crimes for which they have been indicted does not bar the claiming authority from commencing a forfeiture action against them as putative "criminal defendants”. The statute explicitly provides that an action relating to a post-conviction forfeiture crime "may be commenced, and a court may grant a provisional remedy provided under this article, prior to such conviction” although the "court may not grant forfeiture until such conviction has occurred” (CPLR 1311 [1] [a]; emphasis supplied). Indeed, an action relating to a "post-conviction forfeiture crime” must be dismissed at any time after 60 days of the commencement of the forfeiture action unless there has been a conviction in the underlying criminal action or an indictment is pending (CPLR 1311 [1] [a]; emphasis supplied). Additionally, the statute provides that an action relating to a post-conviction forfeiture crime "shall be stayed during the pendency of a criminal action which is related to it; provided, however, that such stay shall not prevent the granting or continuance of any provisional remedy” (CPLR 1311 [1] [a]). It is clear therefore, that the statute authorizes the commencement of a forfeiture action against putative "criminal defendants” who have been indicted but not convicted although it is equally clear that the court may not grant a forfeiture of the seized assets unless there is a subsequent conviction in the underlying felony prosecution. Were this not the case, and if a post-conviction forfeiture action could proceed only against defendants already convicted of a "post-conviction forfeiture crime”, these provisions of the statute would be meaningless, for there would be no plausible reason for requiring the forfeiture action to be stayed pending the prosecution of the underlying criminal action or for the specific provision authorizing the commencement of the forfeiture action prior to conviction or to require dismissal of the action within 60 days *220 unless there had been a conviction or an indictment had been returned.
It is equally plain that the statutory scheme contemplates the availability of provisional remedies in such an action against a "criminal defendant” to ensure the availability of assets to satisfy a potential judgment. The statute explicitly provides "[Provisional remedies * * * shall be available in all actions to recover property or for a money judgment” (CPLR 1312 [1]; emphasis supplied; see, CPLR 1311 [1] [a]). Attachment is authorized against any debt or property against which a forfeiture judgment may be enforced (CPLR 1313) and if a forfeiture action against a "criminal defendant” is successful, a judgment can reach the proceeds of a crime, the substituted proceeds of a crime, the instrumentality of a crime, or an amount equivalent in value to the property which constitutes the proceeds of a crime, the substituted proceeds of a crime or an instrumentality of a crime (CPLR 1311 [1]). Thus, a provisional remedy in an action against a "criminal defendant” is not limited to assets that can be traced to the alleged crimes but can reach any assets of the defendants that could be used to satisfy a potential judgment in the forfeiture action. Indeed, it would be illogical for the Legislature to authorize the commencement of a forfeiture action prior to conviction but not allow provisional remedies to preserve the status quo during the pendency of the criminal action. A contrary interpretation would contravene the legislative purpose "to take the profit out of crime”.
B
 Defendants contend that the interpretation of the statute we have adopted renders it violative of their Federal constitutional right of procedural due process and their right to counsel. We reject these arguments.
Procedural due process recognizes that when the power of the government is to be used against an individual, there is a right to a fair procedure to determine the basis for, and the legality of, such action. There can be no doubt that when a creditor uses government-enforced procedures to prevent the debtor from using his property during the pendency of an action to determine claims to the property, a protected property or liberty interest is implicated and there must be compliance with the Federal constitutional requirement of procedural due process (North Ga. Finishing v Di-Chem, Inc., 419 *221 US 601; Mitchell v Grant Co., 416 US 600; see generally, 2 Rotunda, Nowak and Young, Constitutional Law, Substance and Procedure § 17.9 [b]). We have long recognized that "due process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand” (LaRossa, Axenfeld & Mitchell v Abrams, 62 NY2d 583, 588, citing Morrissey v Brewer, 408 US 471, 481; Health Ins. Assn. v Harnett, 44 NY2d 302, 309) and in determining whether Federal due process standards have been met, we look to the three distinct factors that form the balancing test enunciated by the Supreme Court in Mathews v Eldridge (424 US 319, 335): "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail” (see, People ex rel. Vega v Smith, 66 NY2d 130, 141; Matter of Tammie Z., 66 NY2d 1, 4; LaRossa Axenfeld & Mitchell v Abrams, supra, at p 588; cf. Matter of Sanford v Rockefeller, 35 NY2d 547, 567 [Wachtler, J., dissenting]). Considering these factors in respect to the appeal before us, we conclude that the procedures provided in article 13-A satisfy minimum procedural due process requirements (North Ga. Finishing v Di-Chem, Inc., supra; Mitchell v Grant Co., supra; see, Dillon v Schiavo, 114 AD2d 924; cf. Matter of Horodner v Fisher, 38 NY2d 680).
There can be no question that the interests of both the defendants and the government relative to the grant of a provisional remedy in a forfeiture action are weighty. Imposition of a provisional remedy such as attachment deprives defendants of the ability to use substantial personal assets prior to any determination of their guilt or innocence of crimes charged. The government, on the other hand, has an important interest in deterring criminal conduct, in stripping alleged criminals of their ill-gotten gains and of the financial means to continue their criminal behavior as well as in preserving the assets for use in compensating the victims of the criminal conduct (see, CPLR 1349). Thus, the availability of provisional remedies serves the substantial governmental need of preventing the judicial process from being frustrated by the dissipation of assets that will potentially satisfy a civil judgment.
*222 Finally, to be balanced in the equation is the adequacy of the procedural safeguards to protect defendants from an erroneous deprivation of their property through the imposition of a provisional remedy. Article 13-A, in what appear to be very carefully and comprehensively drawn provisions, establishes an elaborate array of safeguards against such an eventuality. Although the provisional remedy of attachment can initially be granted ex parte, a motion to confirm the attachment must be made, on notice, within five days of the levy (CPLR 1317). A preliminary injunction can only be granted pursuant to a motion on notice although a temporary restraining order can preserve the status quo pending a hearing (CPLR 1333). In each instance, in order for the provisional remedy to issue, the claiming authority must demonstrate that there is a substantial probability that it will prevail on the issue of forfeiture— i.e., a substantial probability that there will be a conviction in the underlying criminal proceeding; that the failure to enter the order granting a provisional remedy may result in proceeds being unavailable in the event of a judgment; and that the need to preserve the property outweighs any hardship on the defendants (CPLR 1312 [3]). The burden of establishing the grounds for the attachment, the need for continuing the levy and the probability of success on the merits is and remains upon the claiming authority (see, CPLR 1317 [2]; 1329 [2]). Where the defendant recovers judgment or succeeds in proving by the preponderance of the evidence that the claiming authority acted without reasonable cause and not in good faith in securing the provisional remedy, the claiming authority is rendered liable for all costs and damages, including attorneys’ fees, sustained by reason of the provisional remedy (see, CPLR 1318 [1]; 1337).
Additionally, the defendant may move at any time to either discharge the attachment (CPLR 1328) or to vacate or modify the attachment (CPLR 1329) and the court may, on its own motion, dismiss the entire action in the interests of justice if it finds such relief warranted by the existence of some compelling factor, consideration or circumstance demonstrating that forfeiture would not serve the ends of justice (CPLR 1311 [4]). In sum, the "statutory procedure effects a constitutional accommodation of the conflicting interests of the parties” (Mitchell v Grant Co., 416 US 600, 607, supra) such that procedural due process is satisfied.
That procedures more protective of the defendants’ interests can be imagined or suggested (see, for e.g., United States v *223 Spilotro, 680 F2d 612 [Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1961-1968]; United States v Long, 654 F2d 911 [Continuing Criminal Enterprise Act, 21 USC § 848]; comment, Criminal Forfeiture: Attacking the Economic Dimension of Organized Narcotics Trafficking, 32 Am U L Rev 227, 247-254; Note, Due Process in Preliminary Proceedings under RICO and CCE, 83 Colum L Rev 2068, 2084-2098) does not in any way undermine this conclusion because the statute as written contains sufficient safeguards to minimize the risk of an erroneous deprivation of a defendant’s protected interest and any additional safeguards would not substantially decrease this risk. It is not the role of the courts to rewrite statutes that have been promulgated by the legislative branch of government nor is it our role to comment on the wisdom of the statute (Sniadach v Family Fin. Corp., 395 US 337, 339). In our limited role of deciding whether a statute as drafted satisfies minimum constitutional requirements, we conclude that article 13-A is not violative of Federal procedural due process requirements.
Defendants’ claim that the statute violates their right to counsel is premised on the allegation that because their personal assets are restrained, they cannot afford to hire counsel of their choice. Although a factual scenario may arise where the pre-conviction attachment of a defendant’s assets will infringe the ability to hire chosen counsel (see, United States ex rel. Ferenc v Brierley, 320 F Supp 406; but see, United States v Badalamenti, 614 F Supp 194, 196-198), the statutory scheme of article 13-A adequately addresses this potential problem by expressly requiring the claiming authority to prove that the need for the provisional remedy outweighs the hardship on any party against whom the order may operate (CPLR 1312 [3]). Moreover, the statute allows a defendant to move to vacate or modify the attachment (CPLR 1329) and allows the court, sua sponte, to dismiss the action in the interests of justice upon consideration of "the impact of forfeiture of property upon the person who committed the crime” (CPLR 1311 [4] [d] [i]). Thus, on its face the statutory scheme does not violate the right to counsel.[7]
Because the Appellate Division applied an erroneous rule of *224 law in reaching its determination it did not consider the factual findings of Special Term that Morgenthau had sustained his burden of establishing a substantial probability of success in the post-conviction forfeiture action, that the failure to grant the provisional remedies may result in the property being destroyed, removed from the jurisdiction of the court, or otherwise be unavailable for forfeiture and that the need to preserve the availability of the property through the grant of the provisional remedy outweighs the hardship to these defendants, nor did the court consider the cross appeal to increase the amount of the attachment.
Additionally, although expressing some doubt as to whether the Desu trust, alleged to be an ERISA trust, could be restrained, citing Ellis Natl. Bank v Irving Trust Co. (786 F2d 466; but see, Sasso v Vachris, 66 NY2d 28; American Tel. & Tel. Co. v Merry, 592 F2d 118), the court vacated the injunction because "there is no contention that this trust account had any connection with the alleged crime”, a factor that is irrelevant under this statute as it applies to the circumstances of this case.
For the foregoing reasons, the case should be remitted to the Appellate Division to consider the facts and the issues not reached on the appeal and cross appeal to that court.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Titone and Hancock, Jr., concur.
Order reversed, with costs, and case remitted to the Appellate Division, First Department, for further proceedings in accordance with the opinion herein. Question certified answered in the negative.

. "Claiming authority” as here relevant, means the District Attorney having jurisdiction over the offense (CPLR 1310 [11]).

. Also authorized was an attachment of $5,118,000 against Citisource, Inc., which is alleged to be a "non-criminal defendant” (CPLR 1310 [10]) and an "instrumentality of a crime” (CPLR 1310 [4]). The attachment of the assets of Citisource is not challenged on this appeal.

. Defendants also argued that the attachment of the assets of Citisource should be modified by allowing the corporation to meet its ordinary business expenses.

. In regard to Citisource, the court appointed a receiver to manage the affairs of the corporation.

. The statute also provides for a forfeiture action relating to a "preconviction crime” (CPLR 1311 [1] [b]), defined as a felony found in article 220 or sections 221.30 or 221.55 of the Penal Law (CPLR 1310 [6]).

. A "criminal defendant” is also defined as a person whom the claiming authority proves by clear and convincing evidence has violated certain provisions of the controlled substance laws (CPLR 1310 [9] [b]).

. Defendants also argue in their brief to this court that their "right” not to be compelled to put forward defenses before trial, apparently emanating from the Fifth Amendment right against self-incrimination, is violated by the statutory scheme. This argument was not raised at nisi prius and is therefore not preserved for our review.