OPINION OF THE COURT
John A. K. Bradley, J.
This matter was originally brought before this court by way of a motion by Joseph Cintron, a defendant in the case of People v Cintron (ind No. 4256/86), to compel the New York *818 Health and Hospitals Corporation to turn over certain accrued vacation pay and other financial benefits owed to him, which funds he had pledged to his attorneys to pay their legal fees in connection with his criminal defense. This court converted such motion into a proceeding under CPLR article 78 in the nature of a mandamus, the Health and Hospitals Corporation (HHC) has answered, and the parties have submitted legal argument and factual proofs.
The facts are essentially undisputed. Cintron was Executive Director of an HHC facility at Lincoln Medical and Mental Health Center until his resignation in March of 1986. At the time of his resignation he was under investigation in connection with certain bribery charges. HHC does not question that at the time of his resignation he had accrued annual and sick leave in the amount of $20,500. In June 1986, Cintron was indicted on bribery charges. He was ably represented in the ensuing criminal proceedings by the firm of Goldman & Hafetz, which made and pressed several pretrial motions on his behalf. Cintron promised his counsel that he would turn over the $20,500 referred to above to them as part payment of legal fees.
On January 28, 1987, the General Counsel of HHC informed Cintron’s counsel that HHC had a claim against Mr. Cintron and would, therefore, not release the funds admittedly owed to Mr. Cintron. On February 2, 1987, Cintron executed a formal assignment of the disputed funds to his counsel.
On February 5, 1987, Cintron entered a guilty plea to certain bribery charges. To this point, the HHC had not instituted any forfeiture proceedings against Cintron, under CPLR article 13-A or otherwise, seeking to obtain authority to retain or seize the $20,500. On March 6, 1987, HHC filed a complaint in the United States District Court for the Southern District of New York against Mr. Cintron seeking damages under the Federal RICO statute.
The parties do not appear to dispute that, putting aside constitutional questions concerning the right to counsel, the State could have instituted forfeiture proceedings under CPLR article 13-A and could, in connection with such proceedings, have sought an order of attachment and a levy upon the $20,500. The basis for the levy would not have been that the $20,500 was the proceeds of Mr. Cintron’s crimes, which it clearly was not, but rather the entitlement of any plaintiff who has properly obtained an order of attachment, to levy *819 upon debts owed to the defendant. (Morgenthau v Citisource, Inc., 68 NY2d 211 [1986].) It is further undisputed that the HHC did not seek to utilize these statutory procedures.
Cintron’s counsel thus urges that the refusal of the HHC to pay over the $20,500 is an illegal seizure or forfeiture. Moreover, even assuming an otherwise procedurally effective seizure, Cintron’s counsel argues that such would be a seizure of counsel fees and thus a deprivation of Cintron’s right to counsel and a violation of the Sixth Amendment.
Disposing of the latter contention first, it is true that it has been widely held that statutes which permit the forfeiture of the proceeds of a crime do not permit the seizure of funds paid to counsel for legitimate defense representation. (United States v Harvey, — F2d — [4th Cir 1987]; United States v Badalamenti, 614 F Supp 194 [SD NY 1985]; United States v Rogers, 602 F Supp 1332 [D Colo 1985].) This court has serious doubts as to whether this doctrine may be extended to situations, as here, where not only has the attorney not yet been paid, but the funds in question have not yet even been delivered into the hands of the criminal defendant. (See, United States v Badalamenti, supra, at 198 ["Nor does the discussion apply to the seizure of funds in the hands of the defendant that he expects to use to pay his attorney.”])
The court need not reach such issue, however, since before an otherwise proper forfeiture may be held to violate the Sixth Amendment, there must first be a proper forfeiture and the HHC does not assert that such a proper forfeiture occurred. The Supreme Court of the United States has held that a governmental entity such as HHC violates the Fourteenth Amendment to the US Constitution when it deprives an individual of "property” without providing such person procedural due process. (Board of Regents v Roth, 408 US 564 [1972]; Goldberg v Kelly, 397 US 254 [1970].) The court in Roth (supra, at 577) defined "property” as follows: "He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.”
Since HHC concedes that it unquestionably owes the benefits in dispute to Cintron, the court concludes that Cintron has been deprived of property. (See, Clift v City of Syracuse, 45 AD2d 596 [1974]; 1982 Opns St Comp No. 82-311.) Since HHC cannot suggest that it provided any semblance of a notice or hearing to Cintron, such deprivation violated the Fourteenth Amendment.
*820 Moreover, HHC’s claim that because of the existence of a claim for RICO, breach of fiduciary duty, etc., against Cintron, the HHC was entitled to set off against the liquidated amount admittedly owing to Cintron is unsupportable. The Appellate Division has held that the City of New York may not refuse to pay admittedly owing contractual moneys by setting off against alleged overpayments on unrelated contracts. (Matter of Knight v Gerosa, 4 AD2d 176 [1st Dept 1957].) In Knight (supra, at 177) the court held, "the city should assume the burden of instituting and sustaining any action it is moved to take to recover the alleged overpayment and should not be permitted to shift the burden to petitioner by compelling petitioner to resort to a plenary action to recover the moneys held.” The HHC seeks to distinguish Knight on the grounds that that case involved a purely inchoate claim while here a RICO action has been filed. But the thrust of Knight is that the setoff itself is improper and the city must bear the burden of pleading and proving its entitlement to the funds.
Thus, because no justification existed for the HHC’s actions, the petition is granted.