OPINION OF THE COURT
Marvin E. Segal, J.
The defendants, Kim and Robertson, were arrested on January 19, 1993, and charged with the unlawful practice of massage in violation of sections 6512 (1) and 7802 of the Education Law, a class E felony, and other related crimes constituting a common scheme and plan. On January 20, 1993, Hon. Ira H. Wexner, a Judge of the Nassau County Court, signed an ex parte order of attachment of the defendants’ property up to $280,000 in value. On January 21, 1993, the plaintiff levied upon certain property of the defendants, to wit:
Sun Robinson
Fidelity Investments — X20-048470 $ 5,035.75
EAB 038-059795 3,750.50
Robin Y. Kim
EAB IRA-380593152 $ 4,000.00
CD 0101709483 60,000.00
plus interest
$40,319.51 038059721-1
Sunrise Federal Savings
$22,679.54 01-401493-0
$ 2,487.68 IRA 0171772
$37,538.38 Money Market 01900936
$46,990.39 Citibank
contents unknown Safe Deposit Box
$ 7,115.00 Nassau County Police Department
The plaintiff now moves for an order pursuant to CPLR 1317 (2) confirming the ex parte order of attachment dated January 20, 1993. Pursuant to CPLR 1312 (3), the ex parte order of attachment herein may be confirmed only upon a determination: (1) that there is a substantial probability that the claiming authority will prevail on the issue of forfeiture; (2) that failure to enter the order may result in property being destroyed, removed from the jurisdiction of the court or otherwise unavailable for forfeiture; and (3) that the need to *713 preserve the availability of the property through entry of the order of attachment outweighs the hardship on any party against whom the order may operate.
The defendants contend, first, that provisional attachment is not an available remedy in a forfeiture proceeding predicated upon an alleged violation of sections 6512 (1) and 7802 of the Education Law. This contention is without merit. Although preconviction forfeiture is available pursuant to CPLR 1311 (1) (b) only in actions involving certain drug-related felony crimes defined by CPLR 1310 (6), provisional relief, including attachment, is available in postconviction forfeiture actions predicated upon any felony defined in the Penal Law or any other chapter of the Consolidated Laws of this State (CPLR 1310 [5]), including the Education Law (see, Morgenthau v Citisouree, Inc., 68 NY2d 211, 219; Kuriansky v Bed-Stuy Health Care Corp., 135 AD2d 160, 164).
The defendants further contend that the plaintiff has not made the requisite showing entitling it to the provisional attachment of the defendants’ assets in that plaintiff has failed to establish the substantial probability that it will prevail in the forfeiture action.
In order to prevail in a postconviction forfeiture action, the claiming authority must first obtain a felony conviction against a defendant. Accordingly, this court must determine whether or not the plaintiff has shown that there is a "substantial probability” that the defendants, Kim or Robertson, will be found guilty, beyond a reasonable doubt (CPLR 70.20), of having committed a class E felony, to wit: the unlawful practice of massage in violation of Education Law § 6512 (1) and § 7802.
In support of its contention that there is a "substantial probability” that Kim and Robertson will be convicted of the aforesaid felony, the plaintiff has presented the affidavit of Detective Michael Walsh, sworn to on January 20, 1993, and the affidavit of Detective Sergeant Darius Perry, sworn to on June 2, 1993. Detective Walsh sets forth the following allegations in his affidavit:
(1) that the Nassau County Police Department has received several complaints involving acts of prostitution and the unlawful practice of massage at 152 Front Street;
(2) that an advertisement running regularly in Newsday indicates that Farmingdale Body Rub is located at 152 Front Street;
*714 (3) that on January 3, 1990, the defendant, Kim, was arrested at 152 Front Street and charged with two counts of unlawful practice of massage in violation of Education Law § 6512 (1), two counts of unlawful use of a professional title in violation of Education Law § 6513 (1) and two counts of prostitution in violation of Penal Law § 230.00. She pleaded guilty to a class A misdemeanor;
(4) that on August 24, 1990, Kim was arrested on similar charges related to her activities at 152 Front Street. She pleaded guilty to a class B misdemeanor;
(5) that on September 13, 1991, Robertson was arrested on similar charges related to her activities at 152 Front Street. She pleaded guilty to one count of prostitution, a class B misdemeanor;
(6) that on January 19, 1993 at 10:30 a.m., Detective Walsh called the phone number listed in the Newsday ad for Farmingdale Body Rub; he was told by the person who answered the call that a massage cost $50. At 12:40 p.m. he arrived at 152 Front Street, paid Robertson $50 in photocopied money, and took off his clothing. Robertson massaged his neck, back, buttocks, legs, chest and arms, and walked on his back. Robertson then asked if he wanted anything extra, and she told him a "hand job” starts at $20.
Detective Sergeant Perry’s affidavit adds the following allegations:
(1) that on January 19, 1993 at 2:00 p.m., he and Detective Antonio Graziano arrived at 152 Front Street, and he asked the defendant Kim for a massage. She told him to come back later;
(2) that a male customer told him he had paid Kim $50 for a massage;
(3) that Detective Graziano found a book on the premises containing $260 including the $50 of photocopied money Detective Walsh had paid to Robertson;
(4) that Kim admitted the book was a record of massages;
(5) that Kim stated that Robertson gives "hand jobs” to certain customers;
(6) that Kim admitted that she had given one massage on that day.
Detective Walsh’s affidavit described the book found by Detectives Perry and Graziano. He states that the book indicates that 5,639 massages were performed during the period *715 November 21, 1991 through January 19, 1993; that the letters "T” and "K” and a small number of other letters denote the individual who performed the massage. By multiplying 5,639 by $50, Detective Walsh calculates that the defendants earned $281,950 through "their criminal enterprise.” (The plaintiffs application herein seeks to attach $280,000 of the defendants’ property based upon the aforesaid calculation.) Detective Walsh further sets forth in his affidavit (1) that Rita St. John of the New York State Education Department, Division of Licensing, has informed the vice squad that neither Kim nor Robertson is licensed to practice massage in New York State, and (2) that a business card bearing the name Salon Farming-dale Center Corporation was found on the premises.
In response, both Kim and Robertson deny offering to or actually giving anyone a massage on January 19, 1993. Each denies having held herself out, on said date, as being able to give a massage. The defendant, Kim, additionally denies having any conversation with anyone relating to a book containing money.
The plaintiff contends that based upon the aforesaid affidavits, it has established the "substantial probability” that Kim and Robertson will be found guilty, beyond a reasonable doubt, of having performed unlawful massages on January 19, 1993, in violation of the Education Law. Said defendants contend that the affidavits submitted by plaintiff in support of the motion to confirm are largely hearsay and that confirmation of the ex parte order of attachment cannot be granted without an evidentiary hearing at which the credibility of the various witnesses, including the aforesaid detectives, can be assessed.
CPLR article 13-A was enacted as a deterrent, "to take the profit out of crime” (Governor’s Mem approving L 1984, ch 669, 1984 McKinney’s Session Laws of NY, at 3627-3628). Toward this end, the statute empowers "District Attorneys * * * as claiming authorities, to recover, as against the criminal defendants, real property, personal property, money, negotiable instruments, securities or other items of value, which constitute the proceeds, substituted proceeds or instrumentalities of a crime, or to recover a money judgment in an amount equivalent in value to the property which constituted the proceeds of a crime”. (Kuriansky v Bed-Stuy Health Care Corp., supra, at 164.) As promulgated, however, CPLR article 13-A predicates postconviction forfeiture of the proceeds of a crime upon a felony conviction.
*716 It is unquestionable that prostitution can be profitable and that such activity should be deterred by every available legal means, particularly in view of the escalating number of victims of "AIDS” and other sexually transmitted diseases. Prostitution is, however, a class B misdemeanor (Penal Law § 230.00), and absent appropriate legislative enactment, a District Attorney lacks the authority to seek the forfeiture of the proceeds of prostitution, no matter how profitable the activity, nor how strong the public policy may be in deterring such activity.
Accordingly, with regard to the instant action, this court must determine whether the plaintiff has shown that it is substantially probable, not that the criminal defendants will be convicted of prostitution but that they will be convicted of unlawful massage, a class E felony.
Plaintiff has not cited, and research has not revealed, a single reported case in this State of a felony conviction for unlawful massage. There is, therefore, no precedent setting forth the proof necessary to obtain a felony conviction, beyond a reasonable doubt, of such crime. The issue as to whether a defendant’s activities constitute conduct which is prohibited by statute, absent valid licensure, is ultimately a question of some complexity to be determined by the trier of fact upon examination of many pertinent factors (People v Rubin, 103 Misc 2d 227, 234). It is clear to this court, however, that the statutory prohibitions against unlawful massage (Education Law §§ 7802, 6512) cannot be utilized by the plaintiff to transform an act of prostitution from a class B misdemeanor into a class E felony, in order to secure the forfeiture of the proceeds generated through the acts of prostitution. Any contrary interpretation of the law would lead to the inappropriate result whereby a prostitute who engaged in an overt, explicit sexual act, for a fee, could be convicted of a class B misdemeanor. (Penal Law § 230.00), while a prostitute who "stroked” another’s back, shoulders, chest and legs, for a fee, and did not engage in any sexual conduct, could be convicted of a class E felony under the Education Law.
Education Law § 7804 provides that in order to qualify as a licensed masseur or masseuse, an applicant must fulfill certain requirements including a high school education, and not less than 500 hours of classroom instruction and graduation from a registered school of massage. In addition, the applicant must pass an examination satisfactory to the State board for massage and the Commissioner of Education. Unlike a local *717 "Massage Parlor Law” promulgated by a municipality such as New York City in response "to a flaunting proliferation of places of prostitution thinly concealed but widely advertised as 'Massage Parlors’ ” (New York State Socy. of Med. Masseurs v City of New York, 74 Misc 2d 573, 574), the purpose underlying the promulgation of article 155 of the Education Law, which provides for the licensure of persons practicing the profession of massage, is not to empower a District Attorney to prosecute prostitution as a felony or to protect persons seeking to obtain sexual touching by paying a fee. The intent of said legislation is to insure the welfare and safety of persons seeking, not touching of a sexual nature, but rather massage therapy free of sexual or other inappropriate contact.
A person who receives massage therapy in their chiropractor’s office, or in their health club, home, or hotel room relies upon the licensure statutes in that he or she has an expectation that the person performing the massage has proven that he or she has certain skills and is of good moral character; the client relies on the license to protect him or herself from harmful and/or sexual touching.
The plaintiff has failed to show that any patron of Kim’s or Robertson’s services, performed at 152 Front Street, anticipated receiving massage therapy, free of any inappropriate sexual touching, from a licensed masseuse. Rather, the plaintiff has described 152 Front Street as a well-known house of prostitution masquerading as a body rub salon (see, New York State Socy. of Med. Masseurs v City of New York, supra). Both defendants had prior prostitution convictions regarding their activities at the premises; the police department has received a number of complaints from neighbors. The advertisement for Farmingdale Body Rub in Newsday did appear in a column entitled "Licensed Massage Therapy”. The advertisement itself, however, makes no reference to the terms massage, masseur or masseuse, nor does the advertisement contain a license number or give any indication that one may obtain any service other than a "body rub” at the advertised location. It appears extremely doubtful that anyone reading the ad for Farmingdale Body Rub would believe that massage therapy by licensed professionals was being offered at the premises (see, 1975 Opns Atty Gen [Inf Opns] 226, which holds that a business advertising as a "body rub parlor”, not operated by a person with a professional license as a masseur or masseuse, and not being held out as a place where a massage may be had, does not violate section 7802 of the Education *718 Law). A felony conviction under section 6512 of the Education Law, by its clear terms, need not be predicated upon both the unlicensed practice of an activity subject to licensure (such as massage) and the holding out as being licensed by the person performing the activity. For example, a terminally ill or destitute patient might actively seek out an unlicensed individual, and might permit said individual to perform a surgical or other invasive procedure despite full disclosure that the practitioner was not a licensed physician (i.e., procedures to terminate a pregnancy prior to the availability of legal abortion). The practitioner could be convicted of practicing medicine without a license in violation of section 6512. The distinction, however, between the aforesaid example and the facts of the instant case is that while the patient may have full knowledge that the practitioner is not licensed, he or she is still seeking to be restored to good health through the practice of medicine by the unlicensed practitioner; he or she is seeking the same service a patient would seek from a licensed practitioner. In this action, the plaintiff has failed to offer any proof that the patrons of 152 Front Street visited the premises in search of licensed massage therapy free from any sexual touching. Rather, from the background picture portrayed by the plaintiff, describing the activities at 152 Front Street, it would appear that the patrons of the services of Kim and Robertson in fact were desirous of sexual contact.
Neither Detective Walsh nor Detective Sergeant Perry set forth in his affidavit that either Kim, or Robertson, affirmatively indicated that they were licensed to perform massage. Said affidavits do not indicate that either detective was advised by any patron of Kim’s or Robertson’s services, that he or she permitted manipulations of their bodies by Kim and/or Robertson with the expectation that said defendants were licensed and that they would therefore be secure from potentially harmful or sexual contact. While said affidavits make reference to the word massage, neither contains any direct quote from either Kim or Robertson utilizing the term. The plaintiff has submitted no evidence that the notebook found on the premises contains the word massage. Finally, plaintiff offered no proof that either Kim or Robertson had either placed the advertisement, had knowledge of the advertisement or had requested that Newsday place the ad in the column entitled "Licensed Massage Therapy”.
Based upon the aforestated lack of proof, this court is unable to find that there is a substantial probability that *719 either Kim or Robertson will be convicted of unlawful massage under Education Law § 6512.
Accordingly, plaintiff’s application for an order confirming the ex parte order of attachment dated January 20, 1993 is denied. All other applications are denied, as moot.