OPINION OF THE COURT
Arthur W. Lonschein, J.
In this forfeiture action commenced pursuant to CPLR article 13-A, plaintiff moves to confirm a certain ex parte order of attachment dated July 29, 1992 pursuant to CPLR 1317 (2) and for discovery in aid of attachment pursuant to CPLR 1326. The defendants Mejia and Madison Trading, Inc. (Mejia defendants) and Grandstone, Ltd., Glemsford Corp. and Rivar Corp. (Grandstone defendants) each move, by separate notice of cross motion, to vacate those orders of attachment.
This action was brought against the defendants claimed to possess an interest in the proceeds, substituted proceeds and, instrumentalities of certain narcotic crimes committed by participants in the notorious "Cali Cartel,” an international cocaine distribution business headquartered in Cali, Columbia. In this action, the plaintiff seeks a judgment against each of the defendants under CPLR article 13-A directing the forfeiture of moneys in bank accounts and investment accounts held in the defendants’ names and allegedly used by the Cali Cartel to conceal and launder proceeds from the narcotics sales.
The plaintiff, Ronald Goldstock, was at all relevant times and is the Director of the New York State Organized Crime Task Force. Pursuant to Executive Law § 70-a (7), he has been authorized by the District Attorney of Queens County, and by the Governor of the State of New York, to bring in Queens County any criminal prosecution and related civil action in regard to narcotics and conspiracy offenses committed by members of the Cali Cartel and others in violation of the law of the State of New York, and is an appropriate "claiming authority” under CPLR 1310 (11).
In his capacity as a "claiming authority” pursuant to CPLR 1310 (11), he commenced this action pursuant to CPLR 1311 against noncriminal defendants to "recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime [and/or] an instrumentality of a crime”. (CPLR 1311 [1].)
*331 The orders of attachment sought to be confirmed involve bank and investment accounts opened in Florida and Panama in the names of nonresidents of the United States. These nonresidents are noncriminal defendants.
It is the contention of the plaintiff that the moneys attached in the brokerage accounts maintained by the various defendants in Panama and Miami, Florida, are proceeds of money laundering stemming from the activities of narcotics sales by the Cali Cartel in the State of New York. The defendants argue that the attachments must be vacated because the situs of the accounts are in Panama and Florida and are thus beyond the court’s attachment power. Moreover, the cross-moving defendants claim that they are in no way involved in drug activity, that they are legitimate business people in Columbia and that their acquisition of the claimed tainted moneys coming from the United States was innocent of any criminality or knowledge of its source.
It is their contention that as a result of political and economic instability in Columbia, many Columbians have maintained part of their savings in United States dollars outside Columbia. For many decades, a "parallel market” of dollars has existed in Columbia to meet the needs of Columbians who wish to exchange their Columbian pesos for dollars and to have dollar accounts outside of their country for greater security and protection of their savings. Many Latin American importers have also maintained dollar accounts in the United States to more effectively pay their United States suppliers. The way the parallel market works is that checks drawn on banks in the United States are sold for Columbian pesos through money exchangers. Many of these checks are usually from unknown third parties with the payee’s name filled in at the time of the transaction so that the purchaser may insert his own name.
The affidavits of the defendants all state that they purchased such third-party checks in the parallel market in Columbia and deposited the checks in their Merrill Lynch accounts in Panama and also at Paine Webber in Miami. They all affirm that they never knew or had reason to know that any such checks they purchased may have come from accounts involved in any illegal activity.
Defendants affirm that all their transactions were with the Panama office of Merrill Lynch and the Miami, Florida office of Paine Webber. They also affirm that they do not maintain *332 property in New York, do not conduct business in New York, and carry no banking or other business activity in New York.
Pursuant to CPLR 1311 (1) "[a] civil action may be commenced against a non-criminal defendant to recover the property which constitutes the proceeds of a crime, the substituted proceeds of a crime, and instrumentality of a crime, or the real property instrumentality of a crime * * * Any action * * * shall be civil, remedial, and in personam in nature”. (See, Morgenthau v Citisource, Inc., 68 NY2d 211.) CPLR 302 (a) provides that personal jurisdiction will obtain over nondomiciliaries if they transact business within the State or contract anywhere to supply goods or services in the State (CPLR 302 [a] [1]), commit a tortious act within the State (CPLR 302 [a] [2]), or commit a tortious act without the State which causes injury to a person or property within the State if they do regular business within the State or expect the tortious act to have consequences within the State (CPLR 302 [a] [3] [i], [ii]).
In support of the motion, plaintiff maintains that the accounts sought to be attached constitute the proceeds or substituted proceeds of a crime and that in personam jurisdiction has been obtained because although the accounts were opened in branch offices in Florida or Panama, the actual location of each account is in New York, the headquarters of the investment offices. In opposition, it is argued that the noncriminal defendants are Columbians living in Columbia and have no ties with New York sufficient to satisfy due process requirements.
Applying the aforestated principles of law to the matter at bar, the court finds that plaintiff has failed to obtain in personam jurisdiction over the Mejia or Grandstone defendants pursuant to CPLR 302. Other than dealing with their bank investment accounts which may pass through New York, neither the Mejia nor Grandstone defendants have any contacts with New York, the acts of trading their accounts in Miami or Panama cannot form the basis for in personam jurisdiction since the crime at the basis of this forfeiture proceeding is narcotics dealing and the Mejia and Grandstone defendants are noncriminal defendants. (See, Nemetsky v Banque de Developpment, 64 AD2d 694, affd 48 NY2d 962; see also, Faravelli v Bankers Trust Co., 85 AD2d 335.) The contracts with the investment companies which provide that New York law shall govern in any dispute between the investment companies and their customers arising from those contracts *333 and that venue would be in New York in any such dispute, in no way obligates the nonresident defendants to litigate issues not arising from the investment contracts in the State nor does it imply consent to in personam jurisdiction in New York. Finally, a banking or investment relationship with a bank or investment company without the State does not establish jurisdiction simply because those entities have their headquarters in New York. With respect to plaintiff’s remaining arguments, the court finds them to be without merit.
In determining the motion and cross motions on jurisdictional grounds, the court did not consider whether the attached accounts are "substituted proceeds” or "instrumentalities” of crime.
Accordingly, the motion is denied. The cross motions to vacate the attachment as it relates to confirm the attachment to the Grandstone and Mejia defendants are granted.