Thomas PALERMO and Sheldon Saltzman, Plaintiffs,

v.

Russell OSWALD et al., Defendants.

No. 70 Civ. 3705.

United States District Court,
S. D. New York.

April 22, 1976.

Elliot A. Taikeff, New York City, for plaintiff Palermo.

Harry L. Simmons, New York City, for plaintiff Saltzman.

Louis J. Lefkowitz, Atty. Gen. of State of N. Y., by Ralph L. McMurry, Robert G. Farrel, New York City, for defendants Oswald, Jones, Doe and Roe.

Bernard Richland, Corp. Counsel, by William J. Walls, New York City, for defendant O'Connor.

OPINION

GRIESA, District Judge.

This action was commenced in 1970 at a time when plaintiffs Palermo and Saltzman were both New York State prisoners. They sued various defendants seeking damages

and an order that they be released from prison and certain other relief.

The complaint was brought under 42 U.S.C., Sections 1983 and 1985, alleging violations of plaintiffs' constitutional rights. Basically, the allegation was that Queens County District Attorney Mackell and other officials, including members of the New York Parole Board, had participated in making an agreement in October 1969 with Palermo and Saltzman which induced these men to arrange for the return of $4,000,000 in jewels stolen from the Provident Loan Society. The allegation in the complaint was that this agreement also induced Palermo and Saltzman to plead guilty to the Provident Loan Society robbery. The complaint alleged that various considerations were agreed to, the main ones being that Palermo and Saltzman would receive suspended sentences or discharges by the Queens County Court on the Provident Loan Society matter and that they would be paroled in August 1970 on sentences which they had received in Richmond County on another case.

Shortly after the action was brought there were motions made to dismiss the complaint. These motions were heard by the then District Judge Mansfield who filed a decision on January 15, 1971, which is reported at 323 F.Supp. 478. Judge Mansfield stated, at page 485 of that decision:

"  .   .   .   it is a fundamental prerequisite of the plea negotiation process that the representations made to the defendant be accurate, and that promises made to him be kept  .   .   .."

Judge Mansfield held that the complaint stated a valid claim against Parole Commissioners Oswald and Jones and other parole commissioners named as John Doe defendants, in that the complaint alleged that the parole board members had promised parole to Palermo and Saltzman on the Richmond County charge and had failed to keep that promise. Judge Mansfield refused to dismiss the complaint as to Oswald, Jones and other parole commissioners named as John Doe defendants. Judge Mansfield also de-

nied the motion to dismiss the case as to a New York City detective named John O'Connor, who had participated in the plea negotiations. Judge Mansfield held that there was no immunity or other legal reason for dismissal as to O'Connor.

However, the complaint was dismissed as against most of the defendants for various legal reasons. Most of Judge Mansfield's discussion in this connection is irrelevant to our present problems except that which deals with District Attorney Mackell and Chief Assistant District Attorney of Queens County Ludwig. Mackell and Ludwig were both named as defendants in the original complaint. As to these defendants Judge Mansfield stated, at page 485 of the opinion:

"The present complaint, however, is limited to a general charge that the defendants failed to fulfill the commitments made, a failure that could have occurred even though they used reasonable diligence, since the power to grant parole rested with the Parole Board and not with the prosecutorial defendants."

However, Judge Mansfield also stated at the same page:

"If it were alleged that these prosecutorial defendants had entered into the alleged agreement with knowledge that the agreement would in all probability not be performed, we would be inclined to uphold the complaint on the ground that no compelling justification exists for cloaking them with immunity, since plea agreements touch at the heart of such liberties as are embodied in the presumption of innocence and the right to a jury trial, and public policy accordingly dictates that the conduct of officials entering into such agreements be measured by a high standard of honor, faithfulness and respect for constitutional rights."

Judge Mansfield gave the plaintiffs thirty days to file an amended complaint against any of the defendants dismissed from the case, and an amended complaint was filed within the thirty-day period referred to by Judge Mansfield.

There was a motion to dismiss the amended complaint in response to which Judge Mansfield filed a decision July 26, 1971. Basically, Judge Mansfield left the case in the same posture as in the first decision. The case was left standing as against defendants Oswald, Jones, O'Connor and the John Doe defendants. Although the amended complaint attempted to allege causes of action against other defendants including Mackell and Ludwig, Judge Mansfield held that the amended complaint should be dismissed as against these other defendants. At this time Palermo and Saltzman were pro se. No final judgment was entered as to the dismissed defendants, so that presumably any right of appeal will accrue as of the time that final judgment is entered following the present proceeding.

The case was dormant for a time. Then counsel was obtained for plaintiffs. Following a decision of the United States Supreme Court in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439, 1973, there were certain motion proceedings in the present case. The *Preiser* decision held that a Section 1983 claim for injunctive relief in the form of release from prison must be treated as a habeas corpus petition with the attendant requirement of exhaustion of state remedies.

The Attorney General of New York moved in the present case to dismiss the injunction phase of the case, alleging that state remedies had not been exhausted.

It is conceded that Saltzman did not exhaust his state remedies. Also Saltzman was released on parole in July 1974. Therefore, there is no claim in the present case for any injunctive or habeas corpus relief on the part of Saltzman. The only thing to which such a request for relief could relate would be Saltzman's present parole status, but there is no claim for habeas relief in this case with respect to Saltzman's parole status.

As to Palermo, the State eventually withdrew its defense of failure to exhaust state remedies. Indeed, the record indicated that Palermo had made a strenuous effort to use state remedies and had been met by a bewildering array of procedural difficulties. I am convinced that Palermo exhausted his state remedies and that there is jurisdiction in the present action to entertain Palermo's habeas corpus request. The State does not contend otherwise.

It was basically in this posture that the case finally came on for trial. The claims for trial were, first, the damage claims of both Palermo and Saltzman against former Parole Commissioners Oswald and Jones.

It should also be noted that although certain other parole commissioners or former parole commissioners were named as John Doe defendants in the complaint, none of them was ever served with process or brought in as parties. Therefore, there has been no trial of any claims against any present or former parole commissioner other than Oswald and Jones. To the extent that the record needs to be cleared on this point, the action is dismissed as against all the John Doe and Richard Roe defendants, the anonymous parole commissioners.

Now, continuing with the issues for trial, there was also the damage claim against Detective O'Connor. In addition, as already noted, the habeas corpus claim of Palermo needed to be determined by the trial. It should be noted that Palermo was considered for parole in June 1975, but parole was refused. He is supposed to be considered again in January 1977. Palermo is incarcerated at the Greenhaven Correctional Facility.

In order to have a defendant subject to an appropriate court order in the event the habeas petition of Palermo were to be granted, the State consented to the joining of the Warden of Greenhaven as a party defendant.

The trial commenced April 19, 1976. A jury was empaneled to try the damage claim. The habeas claim, of course, was for determination by the Court without the jury.

At the conclusion of all the evidence on April 21, I held that there was insufficient evidence to submit any of the damage claims, that is, the claims against Oswald, Jones and O'Connor, to the jury and I dismissed the case as against these defendants.

This leaves for determination the habeas corpus claim of Palermo. The following are my findings of fact and conclusions of law on this claim.

On February 17, 1969, Palermo and Saltzman were scheduled for trial on a robbery charge in Richmond County. They were late for the trial. During the morning when the trial was supposed to start the Jamaica branch of the Provident Loan Society was robbed of several million dollars in jewelry. Palermo and Saltzman appeared for trial in Richmond County in mid-day of February 17, 1969.

Palermo and Saltzman were found guilty on the Richmond County charge late in February, 1969.

The verdict in that case was followed by several appearances in the next weeks by Palermo and Saltzman for sentencing in Richmond County. The sentence was adjourned several times. The apparent reason for these adjournments was to give time for the authorities to discuss with Palermo and Saltzman cooperation in obtaining the return of the Provident Loan Society jewelry stolen in Jamaica on February 17th.

Palermo and Saltzman were suspected of guilt in connection with the Provident Loan Society robbery. Indeed, Saltzman now firmly admits his participation in this robbery. On the other hand, Palermo firmly denies any participation in the Provident Loan Society robbery. In any event, they were both suspects in this robbery in the spring of 1969 and they were both arrested for this robbery in May 1969. At the time of these arrests Palermo and Saltzman were being detained awaiting sentence on the Richmond County conviction. There were various negotiations before the Richmond County sentence occurred in late June 1969, but no agreement was reached with respect to the return of the Provident

Loan Society jewelry or any of the relevant proceedings.

In late June 1969 Palermo was sentenced to an indeterminate term of zero to twenty-five years in the Richmond County case and Saltzman was given an indeterminate term of zero to fifteen years in that case.

On July 6, 1969 Palermo and Saltzman were sent to Sing Sing. This was the commencement of their term of incarceration in a State prison, as distinct from a county jail or a house of detention. They had been incarcerated in the Richmond County House of Detention or jail since February 1969.

I should note here that in the discussions with Palermo and Saltzman relating to possible parole or an agreement for parole in connection with the Richmond County conviction, there were various descriptions of the time for that proposed parole. The testimony at times refers to a parole in one year. At other times the testimony refers to a parole in eighteen months. At other times the testimony refers to parole in August 1970. In the context of this case all of these different terminologies refer to the same thing.

It appears that for an indeterminate sentence, such as was given to Palermo and Saltzman, the minimum time which could be served in a state prison, as distinct from a house of detention or a jail, was one year. This would be one year commencing in July 1969, and apparently the parties were under the impression that this would expire in August 1970. The eighteen months refers to the eighteen months starting with the commencement of incarceration in the Richmond County House of Detention or jail, and that would also expire in about August 1970.

Getting back to the chronology, the next relevant event is that on July 17, 1969 Palermo and Saltzman were brought back from Sing Sing to the Queens House of Detention for discussions regarding the Provident Loan Society robbery and the charge against them for that robbery then pending in Queens County.

It is clear that Queens County District Attorney Mackell had an intense interest in obtaining the return of the jewels taken from the Provident. The stolen jewels amounted to several million dollars in value and had been pledged to the Provident by over 2,000 Queens residents who had borrowed money from the Provident on this jewelry. In addition, the Provident Loan Society and its insurer had a similar intense interest in having the jewelry returned. The law firm of Rein, Mound & Cotton was retained by the Provident and its insurer. Lawyers for that firm were active and instrumental in the plea bargaining negotiations which occurred.

Shortly after Palermo and Saltzman returned to Queens County from Sing Sing they were told of an offer. This offer was conveyed to them by their attorney, Bobbick. Bobbick said that Mackell and Mackell's assistant, Ludwig, offered the following terms. Palermo and Saltzman would be re-sentenced in the Richmond County case to 7 years and 5 years respectively. However, Palermo and Saltzman would be paroled on that case in one year from the time they arrived in Sing Sing in July 1969; a reward of $100,000 would be paid to Palermo and Saltzman for the return of the jewels; Palermo and Saltzman would plead guilty to the Queens County charge and receive suspended sentences or discharges. Palermo and Saltzman indicated to Bobbick this arrangement was acceptable.

It appears that in general Saltzman desired to have Palermo be the spokesman on behalf of the pair in the negotiations, and indeed certain of the meetings were held by Palermo without the presence of Saltzman. However, when such meetings were held Palermo would relay the offers or the information to Saltzman.

A few days after the visit by Bobbick, which I described above, Palermo received a visit from Detective O'Connor and from an attorney named Evseroff. O'Connor was acting on occasion as a liaison between Mackell's office and Palermo and Saltzman. Evseroff had represented Palermo at one stage of the Richmond County case. It is not completely clear why Evseroff appeared at this juncture in the Queens negotiations, but he was there.

Evseroff stated that Bobbick had misrepresented the situation. Evseroff stated that there could be no re-sentencing in the Richmond County case and there could be no reward of $100,000. But Evseroff said that there was a new offer from the Queens District Attorney's office, and he proceeded to present this offer. Evseroff stated, in O'Connor's presence, with O'Connor doing some of the talking apparently, that the present 25 and 15 year sentences imposed in Richmond County would remain, but that parole would occur in eighteen months from the time of the original incarceration in February 1969. The result, as I indicated earlier, would be that the parole would occur in about August of 1970. Parole supervision would be the minimum permissible terms of five years. Evseroff and O'Connor further stated that if Palermo and Saltzman pleaded guilty to the Provident Loan robbery in Queens County they would receive suspended sentences there. Certain other elements were discussed which are not necessary to be described here.

Palermo asked how they could be assured regarding the parole. At this point O'Connor and Evseroff went to see Ludwig in the District Attorney's office. They presented the problem, at which time Ludwig retired into another room. Shortly thereafter he came back and reported to O'Connor and Evseroff that he, Ludwig, had spoken to the parole board and one or more representatives of the parole board had indicated that upon the District Attorney's recommendation the board would grant early parole to Palermo and Saltzman. This meant to Evseroff one year from July, 1969, the minimum prison time which could be served.

O'Connor and Evseroff reported this conversation to Palermo, stating that Ludwig had spoken to a parole commissioner and that Ludwig said that the parole commissioner thought that the parole board would

accept the recommendation of the Queens County District Attorney. Palermo's testimony indicates that the parole commissioner referred to in the conversation as reported to him was Commissioner Jones.

Following this meeting Bobbick re-entered the picture. Bobbick and Norman Rein of the firm of Rein, Mount & Cotton, visited Palermo two or three times. After some initial confusion in these discussions, Bobbick and Rein stated there could be no change in the 25 and 15 year Richmond County sentences, but conveyed the offer for parole on those sentences of one year from July 1969, and suspended sentences on the Queens County robbery charge. Apparently Bobbick and Rein were also indicating that a reward of $100,000 might be paid. The testimony does not explicitly indicate that there was a discussion of the five year limit on the term of parole supervision. However, it was either implicit or explicit that this was part of the offer. Again, there were certain other considerations discussed which do not need to be described here.

About October 10, 1969, two members of the Rein firm, namely Arthur Brook and Eugene Leiman, met with parole board Commissioner Jones. Also present was Detective Caparell representing the Queens District Attorney's office in that discussion. Leiman and Brook indicated that they sought assurances from Jones that Palermo and Saltzman would be paroled in eighteen months, namely, in August 1970. Exactly what Jones said is somewhat in doubt. However, the gist of the testimony is that Jones indicated that the parole commissioners would consider the request made for the parole in August 1970, but also indicated that no commitment· whatever would be made by the parole board to any specific parole.

I should note that at some point before the October 10, 1969 meeting with Commissioner Jones, there was a private conversation between O'Connor and Saltzman. This occurred in the Queens House of Detention. At this time O'Connor said that Palermo and Saltzman would never get a better deal than the promised eighteen months in jail, so that they would be home by next August. O'Connor urged Saltzman to accept this deal.

Returning to the time of the meeting with Commissioner Jones, I find that Palermo and Saltzman were never cautioned in any way regarding the absence of a commitment from the parole board. Indeed, Palermo and Saltzman were led to believe that there was a firm understanding that they would be paroled at the August 1970 time, after the year or the eighteen months, however one calculates it. Indeed, Bobbick advised Palermo after the meeting with Commissioner Jones that the meeting had been successful and that there was a deal for parole at the requested time.

The final agreement was reached on October 24, 1969. The first meeting that day occurred between Palermo and O'Connor, Rein and Bobbick. The same offer as made before was reiterated, namely, the one year parole on the Richmond County case, the suspended sentences or discharges on the Queens County robbery case and other considerations, including apparently, the $100,-000 reward. Again I find that plaintiffs were led to believe, either implicitly or explicitly, that they would receive the minimum parole supervision of five years following their release on parole.

Palermo stated that the deal was acceptable. However, later in the day O'Connor, Bobbick, and Rein returned to see Palermo and stated that District Attorney Mackell would not consent to the $100,000 reward.

Palermo stated that the deal was satisfactory without the $100,000 reward. At this point Palermo was taken to the office of Ludwig. Palermo asked to have Ludwig personally confirm the agreement. Ludwig stated that it was agreed that Palermo and Saltzman would be released on parole on the Richmond County charge in the year time requested, and the Queens County robbery charge would be dealt with by either discharges or suspended sentences. Again I find that in addition plaintiffs were led to

believe, either expressly or implicitly, that they would also have the benefit of the minimum five-year time for parole supervision after release on parole. The details of the October 24th negotiations were relayed to Saltzman and approved by him. Of course, the consideration due from Palermo and Saltzman in connection with the agreement and the offers was to return the jewelry and to plead guilty to the Queens County robbery.

Following the conference with Ludwig at which the agreement was confirmed, Palermo made certain telephone calls upon the instruction of Saltzman. Palermo then took the authorities to 40th Street in Manhattan by the East River. At that point $4,000,000 worth of the jewelry from the Provident Loan Society robbery was recovered in a car at that location.

During the discussions leading to the October 24th agreement District Attorney Mackell had various meetings with Bobbick and also with Rein and Rein's partner Arthur Brook. Mackell stated that he would "make it a career" to see that Palermo and Saltzman would serve the minimum prison sentence, which would mean the one-year period, and that Mackell would "break his back" to this end.

Following the return of the jewelry Mackell issued a press release announcing the return of the jewelry. The release stated twice that this was the largest recovery of stolen property in the history of law enforcement.

It appears that the $4,000,000 in jewelry was not all of the jewels stolen from the Provident Loan Society. An estimate has been made that approximately $1,000,000 worth of jewelry was not returned. However, at no time did District Attorney Mackell or anyone from his office register any complaint to Palermo and Saltzman to the effect that they had in any way breached the agreement or failed to carry out their part of the agreement.

The evidence in this case has explored in some detail numerous events occurring following October 24, 1969. Only a few of them need to be mentioned here. One salient event occurred about December 15, 1969. At that time it appears that an employee of the parole board by the name of McCarthy telephoned Assistant District Attorney Ludwig and discussed with him the attempt to have some arrangement made for early parole of Palermo and Saltzman. McCarthy took a very jaundiced view of any lenient treatment of Palermo and Saltzman. McCarthy stated that Palermo and Saltzman were not entitled to any consideration of any type whatsoever by any agency.

Contrary to the express agreement made by Ludwig and his superior, Mackell, that they would bend every conceivable effort to carry out the agreement and to obtain the minimum prison time and early parole for Palermo and Saltzman, Ludwig replied to McCarthy as follows. Ludwig expressed his agreement with the attitude of McCarthy and added that the case reminded him of Murf the Surf, involved in the robbery of the American Museum of Natural History where leniency was granted after some restitution of the stolen property and this was followed by a violent crime by the person who had been treated leniently. This volunteered opinion of Ludwig, as I say, clearly violated the letter and spirit of the agreement made by Ludwig and Mackell.

The comment of Ludwig was important enough to record in a lengthy memo prepared by McCarthy which was circulated to various parole board officials and placed in numerous files.

On April 16, 1970 Palermo and Saltzman entered guilty pleas to the robbery charge in Queens County. The parole hearings for Palermo and Saltzman were scheduled for the end of April. The purpose of these hearings was to set the minimum sentence to be served under the indeterminate 25 and 15 year sentences imposed in Richmond County. The lowest minimum sentences which the parole board could set were the one year terms from July 1969 which had been the subject of the many discussions and had been purportedly agreed upon by Mackell and Ludwig.

In preparation for the April hearings, Mackell wrote a letter to Russell Oswald, Chairman of the Board of Parole, which did indeed recite the cooperation of Palermo and Saltzman in obtaining the return of the property, the stolen jewelry. The letter enclosed the press release which had been issued by Mackell at the time of the return of the jewelry. However, Mackell's letter made no reference to the commitment by his office to the one-year term. Although the letter stated that lenient treatment was requested, the letter must be viewed as somewhat ambiguous and less than the vigorous action which had been promised.

In light of Ludwig's private statement to the parole board through McCarthy, the letter is less than an effective representation of the interests of Palermo and Saltzman in carrying out the agreement which Mackell and Ludwig had entered into.

At the same time Norman Rein of the firm of Rein, Mound & Cotton wrote a vigorous letter to the parole board recommending "extreme leniency" in the treatment of Palermo and Saltzman.

For various reasons no hearing was held in April. However, parole hearings were held for both Palermo and Saltzman in June, 1970. The transcripts of these hearings are in evidence. Both Palermo and Saltzman made fervent pleas with respect to what they believed to have been agreed, namely, that they would be paroled in the one year time.

The hearings were dealt with by a panel of three parole commissioners, namely, Regan, Lewis and Gross. The commissioners advised Palermo and Saltzman that no commitment whatever had been made by the parole board and that they would treat the case entirely without respect for any such commitment.

In the case of Palermo, the panel fixed the minimum term of imprisonment as six years. In the case of Saltzman, the minimum period of imprisonment was fixed at five years. The decisions of the panel are not reviewable and were not reviewed by other parole commissioners or the full parole board of twelve persons.

It appears that some representative of the Queens District Attorney's office requested to attend the parole hearings at the prison. Who that was is not shown by the record. The testimony about that is vague in the extreme.

However, it is perfectly clear, and the record so demonstrates, that steps were open to District Attorney Mackell's office to take far more vigorous action to carry out the agreement with Palermo and Saltzman than was taken. Apparently the policy of the parole board is that outsiders, such as representatives of a district attorney's office, are not permitted to actually appear at the parole hearings held in the prison. However, it is perfectly permissible to have persons such as representatives of a district attorney's office meet with the panel of the parole commissioners outside of the prison and present any views which should be presented. No attempt at such a meeting was made.

August 1970 passed and neither Palermo nor Saltzman was released on parole.

In the late fall of 1970 Palermo moved to withdraw his guilty plea on the Queens County robbery charge. This motion was denied. However, the Queens County sentencing judge discharged both defendants at the time of the sentence, which occurred January 11, 1971.

Now, let me summarize my conclusions.

■ I find that Palermo and Saltzman were induced to plead guilty to the Queens County robbery charge in connection with the Provident Loan Society robbery and were induced to return $4,000,000 in jewels, and that the inducements consisted of promises and representations made to them and to their attorneys by Ludwig and O'Connor that Palermo and Saltzman would be paroled in the one year period, namely in August 1970, in the Richmond County case, and that the period of time to be served on parole supervision after such release would be five years.

As to District Attorney Mackell, I find that the preponderance of the evidence demonstrates that Mackell knew of the representations of Ludwig, that is, the flat commitments that parole on the Richmond County charge would be in the one year time and that the period of supervision after such release would be five years. I cannot believe that Mackell was oblivious to the fact that Palermo and Saltzman were requiring some very specific commitments in return for their assistance with respect to the $4,000,000 in jewels and their guilty pleas.

I further find that Ludwig and Mackell knew that the commitments and representations made to Palermo and Saltzman about the August 1970 parole were false and knew that they had no commitment or assurance from the parole board regarding any parole time.

As to O'Connor, I find that there is no evidence that he was more than a messenger and there is no evidence that he knew of the falsity of the representations or commitments he was conveying.

I further find that Mackell clearly violated his agreement to take all possible steps to have Palermo and Saltzman paroled in August 1970.

Consequently, we have a situation where a plea bargain was made, was made in bad faith on the part of the prosecuting authorities, and it was not carried out.

The question arises as to what relief should be granted. *See Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971). It is clear to me that one possible alternative discussed in the cases would be completely meaningless here, and that alternative is the opportunity to withdraw a guilty plea. *See United States ex rel. Selikoff v. Commissioner of Correction of State of New York*, 524 F.2d 650 (2d Cir. 1975). Obviously, it would mean nothing whatever to permit a withdrawal of the guilty pleas in Queens County.

With respect to the causes of action for damages, I have already noted the fact that the causes of action against Mackell and Ludwig were dismissed on the pleadings by Judge Mansfield. The defendants which Judge Mansfield allowed to remain in the case subject to damage claims have been dismissed by me because the evidence did not substantiate such claims. Whether or not there would be valid damage claims against Mackell and Ludwig, is a matter which I cannot decide at the present juncture. Whether Judge Mansfield's dismissal of the claims against Mackell and Ludwig will be overturned on appeal and whether the claims against them will be reinstated is something that is a matter for the appellate process.

In the present circumstance the only meaningful and reasonable way to grant relief is to order the release of Palermo and grant the writ of habeas corpus.

For the reasons stated above I am directing that Palermo be immediately released from incarceration and that he be released unconditionally, not subject to parole. If the plea bargaining agreement had been carried out, he would have been released in August 1970 and the five year parole supervision time would have expired in 1975. All of these time periods have expired.

The parties are directed to submit an appropriate judgment.