THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
DARRYL A. BROWN, Appellant.

Third Department, November 16, 1989

---

**APPEARANCES OF COUNSEL**

*George M. Dentes* for appellant.

*Benjamin J. Bucko, District Attorney (Frank Smithson* of counsel), for respondent.

**OPINION OF THE COURT**

KANE, J. P.

The conviction appealed herein stems from defendant's sale of two pounds of the controlled substance marihuana. Defendant's primary contention is that County Court erred in denying his motion to suppress evidence seized from a briefcase which defendant had placed in the automobile he was driving at the time of his arrest. The facts, as revealed at the suppression hearing, show that defendant became part of a police investigation originally revolving around suspected drug traffickers Jay Hurd and Jeffrey Valas. Defendant, also a suspected drug dealer, was seen visiting them at a local hotel the day before his arrest. On the following day, defendant and Hurd were seen leaving the hotel and heading in the direction

of a local marihuana dealer. Hurd and defendant were watched closely upon their return to the hotel, the police believing a drug transaction had occurred.

Hurd and Valas eventually left the hotel that day, their vehicle being stopped by the police shortly thereafter. Upon apprehending Hurd and Valas, the police found a gun in their vehicle and Valas admitted there was also marihuana in the car. All this was relayed to the police watching defendant, who was observed a few hours later leaving the hotel with two briefcases. Defendant placed the briefcases in an automobile borrowed from his sister and drove away. A computer check revealed that defendant's driver's license had been revoked and, suspecting that he had participated in a drug transaction, the police stopped defendant's vehicle and arrested him for unlicensed operation of a motor vehicle, hoping to obtain further evidence of defendant's involvement in the drug sale. Upon defendant's arrest, the police located the briefcases but defendant refused to consent to their search and immediately entered the vehicle and locked the briefcases. The police then obtained permission from the car's owner, defendant's sister, to search the vehicle and found within one of the briefcases a bound stack of 260 $1 bills with $20 bills placed on both sides.

County Court refused to suppress the money, finding, *inter alia,* that there was probable cause to arrest defendant and that defendant's sister validly consented to a search of the briefcases. At trial, the People's case was based in large part on the fact that the configuration of the money was the same as that given by Hurd when describing the drug transaction that took place between himself and defendant, who was subsequently convicted for criminal sale of marihuana in the first degree.

■ In affirming the conviction, we focus our attention on the issue of whether the warrantless search of defendant's vehicle was based on probable cause and thus justified under the "automobile" exception to the warrant requirement provided for by our State and Federal Constitutions *(see, People v Belton,* 55 NY2d 49, 52).*

Defendant initially contends that, pursuant to *United States*

---

* We briefly note our disagreement with defendant's contention that this issue was not properly preserved for appeal. During the suppression hearing, the People sufficiently raised the issue of probable cause for the search such that defendant had a fair opportunity to present his proof in opposition and we have an adequate record for review *(see, People v Martin,* 50 NY2d 1029, 1031).

*v Ross* (456 US 798), the automobile exception allowing warrantless searches does not apply here because the police were only interested in searching the briefcases and not the entire vehicle. We disagree. In *Ross,* the United States Supreme Court stated that where probable cause to search is localized in a container, mere placement of the container in an automobile does not give rise to generalized probable cause such that the automobile exception is invoked and a warrantless search of the entire vehicle, including the container, is justified *(see, supra,* at 812-813; *see also, People v Langen,* 60 NY2d 170, 177, *cert denied* 465 US 1028). However, the *Ross* court also stated that "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search" *(United States v Ross, supra,* at 825).

Here, State Police Investigator Leslie Hyman testified that experience showed that "drugs can be secreted any place in the vehicle" and that areas of defendant's car other than the briefcases were actually searched. These facts indicated that this was not an instance in which probable cause to search focused *only* on the briefcases but that the police believed that incriminating evidence might be found anywhere in the vehicle *(see, People v Langen,* 60 NY2d 170, 180, *supra).*

Defendant next argues that, pursuant to *People v Belton* (55 NY2d 49, *supra),* the People failed to meet their burden of proving that the police had reason to believe that the automobile contained evidence of the drug transaction or that such evidence was related to the crime for which defendant was arrested. In defining what constitutes a lawful search falling within the automobile exception to the warrant requirement, the Court of Appeals has held that "where police have validly arrested an occupant of an automobile, and they have reason to believe that the car may contain evidence related to the crime for which the occupant was arrested * * * they may contemporaneously search the passenger compartment, including any containers found therein" *(supra,* at 55). According to defendant, the search of the briefcases was unlawful since it was not related to the crime for which he was arrested—driving without a license. The Court of Appeals has recently stated, however, that nothing in the *Belton* rule creates an "inflexible requirement that the search concern only items relating to crimes for which the defendant is *formally* arrested" *(People v Blasich,* 73 NY2d 673, 680 [emphasis supplied]). "Thus, the proper inquiry in assessing the propriety of

a *Belton* search is simply whether the circumstances gave the officer probable cause to search the vehicle. Whether the officer had probable cause to arrest an occupant of the vehicle for one or more crimes is significant. Which of those crimes the officer selected when formally notifying the suspect that he was under arrest has little bearing on the matter" *(supra,* at 681).

The precise issue here, then, distills to whether the police had probable cause to arrest defendant for the illegal drug transaction which gave rise to their belief that evidence relating to that crime was located in defendant's vehicle. Probable cause exists where the facts and circumstances known to the arresting officers are sufficient in themselves to warrant reasonable men in their belief that a crime has been committed *(see, Brinegar v United States,* 338 US 160, 175-176; *People v McRay,* 51 NY2d 594, 602). "In dealing with probable cause * * * we deal with probabilities" *(Brinegar v United States, supra,* at 175) and "[t]he evidence of criminality need not rise to the level necessary to support a conviction or even be sufficient to establish a prima facie case * * *; it need merely appear more probable than not that a crime has taken place and that the one arrested is its perpetrator" *(People v Hill,* 146 AD2d 823, 824, *lv denied* 73 NY2d 1016; *see, People v Carrasquillo,* 54 NY2d 248, 254; *People v White,* 16 NY2d 270, 273, *cert denied* 386 US 1008).

█ The police are allowed to draw upon the entirety of their experience and knowledge in deciding the existence of probable cause *(see, People v Hill, supra; People v Davis,* 111 AD2d 563; *People v Valdez,* 78 AD2d 449). Here, the police suspected drug activity early in their surveillance as Hurd and Valas were known drug traffickers and frequently changed motel rooms, "a common practice among drug dealers as involved in [drug] transactions", according to the police investigator. Defendant visited Hurd and Valas the night before the sale and was seen accompanied by Hurd driving towards a known marihuana dealer the next day *(see, People v Marshall,* 13 NY2d 28, 33-34; *People v Christofora,* 43 AD2d 766, 767, *cert denied* 419 US 867). Defendant entered Hurd's hotel room without briefcases and exited with them. Hurd and Valas were subsequently stopped; a gun was found and Valas told the police there was marihuana in their car. The police had information about defendant and his prior involvement in drug dealing *(see, People v Davis, supra,* at 565). We cannot scrutinize each element of this case in isolation but must view

them in context with "the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents" *(People v Cabot,* 88 AD2d 556, 557). Given the "alarming pervasiveness of drugs in our society" *(People v McRay,* 51 NY2d 594, 603, *supra),* we recognize that the police may have an increased awareness of the probability that defendant's conduct was criminal *(cf., supra).* Here, we find that "[a]lthough each factor, standing alone, could be suscepti- ble to an innocent interpretation" *(People v Hill,* 146 AD2d 823, 825, *supra),* given the facts of this case, the police with their training and experience had probable cause to believe defendant had made an illegal drug transaction *(see, supra; People v Bittner,* 97 AD2d 33, 38). As such, the motion to suppress evidence gained in the search of defendant's vehicle was properly denied. Having reached this conclusion, we do not find it necessary to pass upon defendant's standing to challenge the search, nor his remaining challenges thereto.

██ Finally, we find no merit to defendant's contention that the People's failure to prove the precise location of the crime, as alleged in the indictment, deprived him of a fair trial. The precise location of the sale was not an element of the crime charged and we do not find that the People's failure to prove the exact location constitutes a change in their theory of prosecution such that defendant was deprived of a fair trial *(see, People v Grega,* 72 NY2d 489; *People v Spann,* 56 NY2d 469, 473-474; *People v Iannone,* 45 NY2d 589, 594-595).

MIKOLL, YESAWICH, JR., LEVINE and MERCURE, JJ., concur.

Judgment affirmed.