■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALEXANDER MOSIURCHAK, Appellant.—Levine, J. Appeal from a judgment of the County Court of Sullivan County (Hanofee, J.), rendered March 3, 1989, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree and criminally using drug paraphernalia in the second degree.

Defendant's conviction for criminal possession of a controlled substance in the first degree (Penal Law § 220.21 [1]) and criminally using drug paraphernalia in the second degree (Penal Law § 220.50 [2]) arose out of a May 28, 1986 seizure by the State Police of more than four ounces of cocaine and various drug-packaging items at a house owned by him on Laurel Avenue in the Town of Fallsburg, Sullivan County, pursuant to a search warrant. Warrants were also issued authorizing the search of an enclosed 10-foot-by-20-foot storage area rented by defendant at a public storage facility in the Town of Chester, Orange County, and a house located on Birchall Road in the Town of Greenfield Park, Ulster County. The search of the Laurel Avenue residence revealed overwhelming indicia that it had been used as a cocaine manufacturing laboratory, including cases of hydrochloric acid, microwave trays containing traces of cocaine, heat lamps and characteristic physical modifications of the premises.

Defendant's first point on appeal is that the facts set forth in the search warrant application were insufficient to establish probable cause. The application consisted of the affidavit of a highly experienced State Police narcotics investigator, fully familiar with the process of manufacturing usable cocaine through conversion of cocaine base, and the chemicals utilized during conversion. He averred that, during April and May 1986, police agencies had discovered five abandoned caches at dump sites in Orange, Sullivan and Rockland Counties consisting of articles and materials definitely used in the manufacture of cocaine, including in each instance 55-gallon drums of the chemical methylethylketone (hereinafter MEK), all of which were black with white tops whose identifying numbers were spray painted black, containing cocaine residue. MEK is a chemical commonly used in cocaine manufacture and has a characteristic, ether-like odor. About two weeks before the application, Jose Gomez was arrested in possession of 115 pounds of cocaine plus packaging materials. Other

evidence seized from Gomez linked him to defendant's brother, John Mosiurchak. A search warrant was issued for the residence of defendant's brother in the Town of Crawford, Orange County, and from that residence State Police seized over four ounces of processed cocaine, two pounds of what appeared to be cocaine paste and drug-packaging materials. A vehicle registered to defendant was also found on his brother's premises. During the search of the home of defendant's brother, the police answered a telephone call in which the caller asked if she was speaking to "John" and, after receiving an affirmative reply, stated, "we are getting the second batch ready now". Defendant's brother told the police that he found the cocaine at one of the sites of abandoned drug manufacturing materials previously discovered.

The foregoing evidence strongly supported a reasonable inference that one or more clandestine cocaine laboratories was operating in the general area and that defendant's brother, Gomez and others were participants in the operation. Evidence in the search warrant application linking defendant and the Laurel Avenue residence to such cocaine processing was as follows. As previously noted, defendant's brother was clearly involved in the operation and he was in possession of defendant's car. Additionally, on May 15, 1986 a utility company employee responded to a power failure at the Laurel Avenue residence. While there, he detected a strong ether-like odor emanating from the basement of the premises. He also observed a 55-gallon drum in back of the house, colored black with a white top. Utility records disclosed that the Laurel Avenue residence was consuming electricity at a rate of more than twice the normal residential usage. The search warrant affiant indicated that exceptionally high energy consumption is common with cocaine manufacturing operations because of utilization of heating devices such as microwave ovens and hair dryers for purposes of drying the converted cocaine. The utility bills were being sent to defendant at his Queens County address. Additionally, in an inspection by the affiant of the outside of the storage locker rented by defendant in Chester, a strong odor of MEK was detected.

In our view, the foregoing evidence was sufficient to establish probable cause that defendant was involved in illegal cocaine processing at the Laurel Avenue residence and that evidence of these activities would be found there. The applicant for the warrant was entitled to rely upon his extensive experience in narcotics investigations in understanding and explaining the significance of the abnormally high energy use

at the premises and defendant's apparent possession of chemicals associated with cocaine manufacturing *(see, People v Brown,* 151 AD2d 199, 204-205). These factors, the previously described circumstances and the reasonable inferences therefrom made it " 'more probable than not' " that illegal drug activity was being conducted by defendant at the Laurel Avenue residence *(People v Mercado,* 68 NY2d 874, 877, *cert denied* 479 US 1095; *see also, United States v Fooladi,* 703 F2d 180; *United States v Park,* 531 F2d 754).

Nor has defendant persuaded us that the evidence seized should be suppressed on the ground that the applicant willfully omitted or misrepresented material facts before the Justice who issued the search warrant. The major factor cited by defendant in support of this contention is that the prosecution's forensic expert who examined the MEK drums seized from the storage area in Chester found them all closed and emitting no odor of MEK, whereas the applicant for the warrant had averred in his affidavit that he had detected the odor emanating from the area. Without other evidence at least showing that only the same closed drums were secured in defendant's storage stall at the time of the warrant applicant's exterior inspection more than a week before the seizure, this hardly satisfies defendant's burden of proving a willful misrepresentation sufficient to invalidate the seizure *(see, People v Tambe,* 71 NY2d 492, 504).

Next, defendant contends that reversal is necessary because, in its direct case, the prosecution introduced prejudicial evidence of unrelated uncharged crimes, consisting of the various abandoned drums of MEK containing residues of cocaine and other items found at nearby dump sites, some of which were discovered even before defendant acquired the Laurel Avenue residence in late April 1986. We conclude, however, that the evidence was properly admitted as a *Molineux* exception to inadmissibility *(see, People v Molineux,* 168 NY 264). The theory of the defense, as shown by defendant's opening statement, was that if the Laurel Avenue residence was being used as a cocaine processing laboratory (and this was virtually conceded), it was done without defendant's knowledge or consent, he having rented the entire premises to Jaire Gonzales almost immediately after acquiring title. This defense was viable because defendant was not present when the house was searched and there was no direct evidence of his actual occupancy through surveillance or otherwise, nor fingerprints of his found on any of the incriminating articles seized. Therefore, it was necessary for the prosecution to prove defen-

dant's knowledge and dominion and control by linking defendant to the apparent operation of the drug laboratory at the premises.

The roughly contemporaneous discovery of drug-manufacturing appliances and chemicals at the various sites in the general area, together with the items seized in the storage locker defendant rented, furnished highly probative evidence of such a connection. Specifically, the cases of hydrochloric acid found at the Laurel Avenue residence were not only from the same manufacturer but from the very same lot number as the hydrochloric acid abandoned at the dump sites; the MEK drums in defendant's storage locker were made by the same company as the abandoned drums found at one or more dump sites; cans of black spray paint were found at both the Laurel Avenue residence and inside defendant's storage stall in Chester; the identifying labels of the MEK drums in the storage area and the abandoned drums at all sites were spray-painted over; and the MEK drum at the Laurel Avenue residence also was similar in appearance to the abandoned drums and those found in defendant's storage locker. The incriminating evidence of the common characteristics of the abandoned items at the dump sites, and the items seized at defendant's Laurel Avenue residence and his storage locker, fell well within several *Molineux* exceptions. They tended to show that the MEK drums contained in defendant's storage locker (themselves the most direct evidence of defendant's participation in cocaine processing) were not innocently possessed *(see, People v Alvino,* 71 NY2d 233, 242). The mode of concealing the identifying labels on all the drums was probative of the underlying common scheme or plan to operate and conceal the existence of a cocaine processing laboratory *(supra).* The abandoned spray-painted MEK drums containing cocaine explained the significance of the drums in defendant's storage locker *(see, People v Ventimiglia,* 52 NY2d 350, 361). Finally, by tending to prove defendant's active participation in cocaine processing, the evidence cumulatively supported the inference of defendant's guilty knowledge as an element of the possessory crime charged in the indictment *(see, People v Sbraccia,* 92 AD2d 628, 629) and of dominion and control over the cocaine laboratory at his Laurel Avenue residence and the drugs seized there *(see, People v Satiro,* 72 NY2d 821, 822).

Defendant's remaining points may be more summarily disposed of. Viewing the evidence as we must in the light most favorable to the People, there was amply sufficient proof of defendant's constructive possession (Penal Law § 10.00 [8]) of

the cocaine and use of the drug paraphernalia found at the Laurel Avenue residence. In addition to the evidence already discussed, it was shown that, after a hasty acquisition of the premises in late April 1986 for cash, the house was immediately drastically altered for processing cocaine. Dominion and control was further evidenced by the facts that defendant had the utility bills for the house on Laurel Avenue sent to his primary residence in Queens County and the bill of sale, found at the premises during the search and dated May 10, 1986, made out to himself. Defendant's contention that the allegations in the indictment were insufficient to charge constructive possession is entirely devoid of merit. For all the foregoing reasons, the convictions should be upheld in all respects.

Judgment affirmed. Kane, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.