Alexander MOSIURCHAK, Petitioner,

v.

Daniel SENKOWSKI, Superintendent, Clinton Correctional Facility, Respondent.

No. 92 Civ 8092 (VLB).

United States District Court, S.D. New York.

Dec. 13, 1993.

1036

Joel A. Brenner, East Northport, NY, for petitioner.

Bonnie M. Mitzner, Asst. Dist. Atty., Monticello, NY, for respondent.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This *habeas corpus* petition filed pursuant to 28 U.S.C. § 2254 involves the interaction of substantive and implemental justice and the need to honor both, and to protect the public from large-scale criminal activity and its consequences, while assuring protection of the innocent. In order to be effective, law enforcement must be fair; equally in order to be fair it must be effective.[1] In order to fulfill its function law enforcement must protect both defendants and past or potential crime victims.[2]

The petition also presents the question of the judicial response to a situation in which a plea agreement is negotiated[3] but the plea vacated, not at the instance of either party to it, but by a state court over the objection of the prosecution, and the defendant is thereafter tried and convicted on more serious charges.[4]

---

1. *Measures Relating to Organized Crime*, Hearings before the Subcommittee on Criminal Laws & Procedures, Senate Judiciary Committee, 91st Cong., 1st Sess 219–29 (1969).

2. See *Brown v. Doe*, 803 F.Supp. 932 (S.D.N.Y. 1992), *later decision* 811 F.Supp. 156 (S.D.N.Y. 1993).

3. Plea bargaining when noncoercive and when not used to reward more significant offenders for informing on minor ones is a long-recognized means of furthering criminal justice; the inherent incentive to the accused is that details of the crime are not paraded before the sentencing judge or others, while the benefit to the prosecution and the court is conservation of resources, permitting them to deal with more cases.

At the same time, substantial concern has been expressed that the device has been over-used leading to revolving-door justice, sometimes rewarding the worst offenders, and coercing others to give up their right to trial. See Schulhofer, "Justice Without Bargaining in the Lower Courts," 1985 Am Bar Fdn Res J 519 (Summer 1985); Schulhofer, "Is Plea Bargaining Inevitable?," 97 Harv L Rev 1037 (1984); Berger, "The Case Against Plea Bargaining," 62 ABAJ 621 (May 1976); Altschuler, "Plea Bargaining and Its History," 79 Colum L Rev 1 (1976).

Mandatory minimum sentence statutes with their rigidities have been enacted partly as a reaction to abuses of plea bargaining, but have in fact often enhanced such abuses because the bargaining merely shifts to the nature of the charges to be selected, as in the present case. The landmark mandatory minimum, the former 21 U.S.C. § 174 concerning federal drug offenses, was repealed by 84 Stat 1291 (1970) in part because it had led to judicial nullification in the form of greatly increased findings of illegal searches and seizures, widely regarded as devices to avoid imposition of the purportedly mandatory sentences.

4. On September 10, 1986 petitioner was indicted on an A–1 felony charge of criminal possession of a controlled substance in the first degree. On December 8, 1987 he pleaded guilty to a B–1 felony charge filed as an information charging criminal possession of a controlled substance in the third degree. The prosecution agreed to recommend that the sentence be from 2 to 6 years in prison, but did not promise that the court would adopt that recommendation.

On May 28, 1988 the state court vacated the plea before sentencing on the ground that the

For the reasons which follow, I deny the petition. I do so on the merits without separately examining the issue of exhaustion of state remedies because the claim that the prosecution violated a plea agreement is one alleging that the state itself is at fault because of malice, as well as being a matter in which the interests of comity and federalism are best served by ruling now on the merits. *Washington v. James*, 996 F.2d 1442 (2d Cir.1993).

## II

The underlying issue in every *habeas corpus* case whether articulated as such or not, is whether there may have been a miscarriage of justice leading to conviction of the innocent, or to a sentence grossly disproportionate to the underlying conduct. Imprisonment of the innocent or those punished harshly for minor infractions, or failure to protect the public from major orchestrators of large-scale crime both equally constitute miscarriages of justice. See Preamble, Constitution of the United States (to promote "domestic Tranquillity").

Procedural missteps are critical to the extent that they may have led to any of these evils, or go to the core of reliability of the judicial process; otherwise they are, like virtually all procedural matters,[5] subject to harmless error analysis. See *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); *Delaware v. VanArsdall*, 475 U.S. 673, 106 S.Ct.

1431, 89 L.Ed.2d 674 (1986); *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946).

## III

The event leading to the petitioner's ill-fated plea agreement and subsequent conviction was discovery on May 28, 1986 of a large quantity of narcotics production material and devices amounting to an ongoing factory-like operation in a house purchased by petitioner and his wife on April 25, 1986.[6] No one was living in the house and no other activity occurring there was found.

Suspicion was aroused by odors and greatly increased power usage leading to outages at the house. It was bought in an empty condition for $55,000 paid at closing, including $11,000 in currency[7] and the balance in bank checks. All relevant papers in the house such as deed, routine bills and the like were in petitioner's name. No contract of sale was executed in connection with purchase of the house.[8] No explanation was provided by any defense witness with respect to actual use or intended use of the house.

Such circumstances are far more powerful than frequently debatable eyewitness testimony[9] in permitting a jury to infer facts permitting it to find guilt beyond a reasonable doubt. See *Direct Sales Co. v. United States*, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674 (1943); *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954).[10]

plea to an information was impossible after an indictment had already been filed. After failure of new plea negotiations, petitioner was convicted on A–1 felony charges after trial on January 18, 1989 and sentenced to 15 year to life on March 3, 1989; the conviction and sentence were affirmed by the Appellate Division, 157 A.D.2d 1023, 550 N.Y.S.2d 754.

**5.** See Fed.R.Civ.P. 61; 28 U.S.C. § 2111.

**6.** Shortly before, petitioner had temporarily rented a substantial storage area.

**7.** Tr. 61.

**8.** Petitioner furnished no explanation for these circumstances either at trial or in connection with this petition.

**9.** See generally E. Arnolds et al., *Eyewitness Testimony* (1984).

**10.** The totality of the circumstances must be considered in order to yield a comprehensible picture of any situation, especially one in which concealment was likely. See *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707, 82 S.Ct. 1404, 1414, 8 L.Ed.2d 777 (1962); Tushnet, "Book Review," 82 Colum L Rev 1531, 1536–39 (1982). For example, absence of petitioner's fingerprints from any part whatever of a house he had recently bought through an accelerated cash closing and which contains documents carrying his name is more suspicious than reassuring.

Deliberate ignorance of the details of events one is facilitating can be as culpable as direct

In addition to other circumstances, as stated in *United States v. Blackman,* 904 F.2d 1250, 1257 (8th Cir.1990), ("... large sums of unexplained currency is circumstantial evidence of intent to distribute cocaine") (Western Union transfer of $11,000; money laundering conviction affirmed).

## IV

Upon conviction, defendant was sentenced to fifteen (15) years to life pursuant to state statute applicable to A–1 felony charges. This would be out of line for what was in fact a minor offense. The labelling of the crime by preconceived criteria is a limited basis for determining the appropriate, wise, or just treatment of an offender. Harsh sentences for what are in fact if not by technical definition small-scale infractions are vulnerable to acid consideration if mechanically adopted as a result of a rigid mandatory minimum sentence from which justice would have dictated departure.[11]

Avoidance of undue sentences imposed on underlings, at times turned in by higher-ups seeking credit for informing on their former subordinates, is important to the reality and appearance of justice in dealing with criminal activities.

Imposition of adequate sentences upon masterminds using skilled maneuvering to unleash evils associated with large-scale illegal drug manufacturing and distribution is equally important to concern with fairness to all, be they participants in criminal activities at varying levels, or present or potential future victims of them.

On the assumption, which I find reasonable, that the jury properly found petitioner to have carefully planned and sought to insulate himself from, a massive narcotics production operation to be carried out in part for his benefit and under his absent but controlling supervision, a substantial sentence was justified and its precise scope was properly determined by state courts under state law. It is precisely where one is necessarily deeply involved in substantial concealed drug production activities that higher ranges of sentence are justified.

I am entitled in this civil proceeding which does not determine guilt and cannot impose punishment, but protects the People from abuses of criminal justice, to draw an adverse inference from petitioner's failure to explain the circumstances as discussed in part III [12] and from petitioner's admission of guilt which not wiped out as a statement or event by the vacatur of his plea.[13] I need not and therefore have determined not to draw such an inference. The circumstances themselves, including the accelerated purchase without contract, payment on the spot, including use of $11,000 in currency, presence of paperwork in petitioner's name in the house, and drug use so soon after purchase combine unless explained, to support an inference of petitioner's profound large-scale involvement.

## V

It is important to the functioning of government, including ability to negotiate guilty pleas in proper circumstances,[14] that the Government's solemn promises be reliable unless plainly unauthorized. See *Unit-*

---

knowledge. See *United States v. Heinemann,* 801 F.2d 86, 93 (2d Cir.1986), *cert. denied* 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987). The higher up one is in a hierarchy and the more nefarious the consequences of the activity, the more culpable is such distancing one's self from the actuality of the activity being furthered.

Perhaps the classic example in modern times is that of Albert Speer, Arms Minister of the Third Reich, who pleaded guilty at Nuremberg to accepting slave labor for his munitions factories while evading direct participation in these crimes against humanity. See generally A. Speer, *Inside the Third Reich* (1970).

**11.** See *United States v. Caruso,* 814 F.Supp. 382 (S.D.N.Y.1993) and authorities cited.

**12.** See *Brink's, Inc. v. City of New York,* 717 F.2d 700 (2d Cir.1983); Heid, "The Conjuror's Circle—The Fifth Amendment Privilege in Civil Cases," 91 Yale LJ 1062, 1108–09 (1982).

**13.** See Fed.R.Evid. 401–402, 801(d)(2)(A).

**14.** The plea bargaining in this case may have been inappropriate given the massive scale of the narcotics operation discovered in petitioner's house and the strength of circumstantial inferences against petitioner. I would nevertheless enforce it, however, if repudiated by the prosecution which agreed to it. See generally Note 3 *supra.*

ed States v. Sears, Roebuck & Co., 778 F.2d 810 (D.C.Cir.1985); see also 28 USC 1346 (Tucker Act providing for suits against the United States under most federal contracts).

If a party cannot be held to its bargains, few will enter into agreements with that party. This is one reason why the right to be sued is as important as the right to sue. See J. Goebel, Cases and Materials on Legal Institutions 553–68 (1946) (plight of married women in the nineteenth century who could neither sue nor be sued concerning business matters); Labor–Management Relations Act of 1947 (Taft–Hartley Act) § 301, 29 U.S.C. § 185 (establishing trade unions' rights to sue and be sued).

If the Executive Branch with which a person has entered into a contract such as a plea agreement, reneges on that contract, and the defendant had relied on it in ways which might arguably have been detrimental, the courts can and should find a way to enforce that contract. See Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); Petition of Geisser, 554 F.2d 698 (5th Cir.1977); United States v. Mozer, 828 F.Supp. 208 (S.D.N.Y.1993); Palermo v. Oswald, 412 F.Supp. 935, 943 (S.D.N.Y.), aff'd 545 F.2d 286 (2d Cir.1976).

If, on the other hand, the plea is vacated over the objection of the prosecutor, the situation is akin to one in which parties may agree to a disposition of a litigation which requires judicial approval, and even implement part of their agreement, yet the court declines to adopt it. See Fed.R.Civ.P. 23(e) (settlements of class actions); NLRB v. Brooke Industries, 867 F.2d 434, 435 (7th Cir.1989). Settlements may be illegal, as held by the state court here, even though entered into by the parties. See Duplan Corp. v. Deering Milliken, 444 F.Supp. 648 (D.S.C.1977), aff'd in part, rev'd in part 594 F.2d 979 (4th Cir.1979), cert. denied 444 U.S. 1015, 100 S.Ct. 666, 62 L.Ed.2d 645 (1980). Agreements can also be challenged by third parties, resulting in their modification or vacatur, see Martin v. Wilks, 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989). The result is akin to that produced by some other unforeseen intervention, sometimes characterized as force majeure. See Smit, "Frus-

tration of Contract," 58 Colum L Rev 287 (1958).

Varying departments of the Executive Branch may be considered as a single party for numerous purposes. See United States v. AT & T, 461 F.Supp. 1314 (D.D.C.1978) (discovery). At the same time, the separation of powers among the three Branches is "the heart of the Constitution," Buckley v. Valeo, 424 U.S. 1, 120, 96 S.Ct. 612, 682, 46 L.Ed.2d 659 (1976). The independence of the judiciary, particularly in regard to sentencing, is important at the state as well as federal level.

The judiciary was not a party to the plea agreement, as confirmed by the fact that the agreement dealt with the sentence the prosecutor would recommend and did not purport to determine what the court would impose; petitioner was never sentenced pursuant to the agreement or plea.

Implicit in petitioner's argument is the contention that it was improper for the prosecution to change its position after the state court vacatur of the original plea agreement, and demand a plea to a more serious charge as the alternative to trial. This is not a case in which a party to a contract breaches it in order to bargain for a more favorable agreement. See Goetz & Scott, "Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes on the Enforcement Model and a Theory of Efficient Breach," 77 Colum L Rev 554 (1977).

Once the original agreement had been independently vacated without the complicity of the prosecution, the prosecution was at liberty to reconsider the appropriateness of the original and perhaps overly lenient plea agreement based on a reevaluation of the evidence. The plea agreement in this case, having been vacated by the court having jurisdiction rather than having been violated by either contracting party, cannot properly be enforced unless the rejection is reversed on appeal or vacated by the court involved. No appeal was taken from the vacatur of the plea involved here.

## VI

This does not end our inquiry. The Great Writ is a protection against injustice

vouchsafed by Article I § 9 of the Constitution, which provides that the "privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." If the plea agreement cannot properly be enforced given its vacatur by the state court without consent of the prosecution, it may be subject to rescission. If harm was caused and can be rectified, means for doing so must be explored.

Petitioner argues that serious but irrevocable harm has occurred and asks the court to release the petitioner or reduce his sentence to that called for by the vacated plea bargain. He points to irrevocable disclosures of information, such as revealing what a title search would have shown, that his wife was a co-owner of the house in which the drug operation was found. No actual as distinct from possible consequences from any revelations, however, have been suggested.

Petitioner also points out that as part of the plea he admitted his guilt. That admission was, however, not used against him at his trial. The impact of such an admission on his application for release is neutral at best, if not negative in view of the implications for the public of a drug manufacturing operation of the scale found on petitioner's premises. See *Stewart v. United States*, 817 F.Supp. 12 (S.D.N.Y.1993).

Pursuant to the plea agreement petitioner and his wife acceded to forfeiture of the house involved to the United States. While the house has been re-sold, upon rescission of the plea agreement this transaction could be reversed and the equivalent in money awarded to petitioner and his wife if appropriate.[15]

The same forfeiture, however, whether to state or federal authorities, would flow from petitioner's conviction or the facts found by the jury as implemented by a parallel civil case.[16] If so, any effect of the plea agreement would be superseded and hence moot. See *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986); compare in a civil context, Fed.R.Civ.P. 61.[17]

Petitioner further suggests that his admission of guilt is an irrevocable stigma resulting from his plea. This may be true. The plea should only have been taken if petitioner was guilty of the charges to which he pleaded. He does not deny that the state court conducted an allocation to assure itself of this. Improper harm can hardly be done by a voluntarily given truthful admission, however much based on hopes which were dashed by events beyond the control of the other party to the arrangement.

Petitioner does not claim that he was not guilty. Instead he seeks to take advantage of inconsistencies in positions taken by the prosecutor and the state court to parlay resulting errors so as to paralyze substantive justice in this criminal case. It would be bizarre indeed if an admission of guilt in a vacated plea were to lead to overturn of a finding of guilt after trial.

Thus, the plea agreement has been effectively rescinded, but no further relief can be granted because no remaining adverse consequences which can be abrogated remain. No further consequences from the vacatur of the plea agreement remain to be enforced.

## VII

Petitioner argues that he received ineffective assistance of counsel because his attor-

---

15. Transfer of proceeds to the Treasury does not divest the courts of jurisdiction to review propriety of a forfeiture, and 31 U.S.C. 1304 and 28 U.S.C. § 2465 permit payment of any judgment rendered. *Republic National Bank v. United States*, 506 U.S. ——, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992); *United States v. One Lot*, 938 F.2d 1417 (1st Cir.1991).

16. See 21 U.S.C. 845, 853; 18 U.S.C. 1963; 28 U.S.C. 1355; Note, 88 Colum L Rev 390 (1988); *Morgenthau v. Citisource*, 68 N.Y.2d 211, 508 N.Y.S.2d 152, 500 N.E.2d 850 (1986).

Since petitioner was not living in the house but using it solely as illegal business premises, it

would not qualify even for special homestead safeguards against *ex parte* procedures. See *United States v. Premises*, 889 F.2d 1258 (2d Cir.1989).

17. This is not a case akin to *Property Clerk v. Piacentini*, 160 A.D.2d 465, 554 N.Y.S.2d 136 (1st Dept.1990) where a defendant pleaded guilty in return for a promise to return a vehicle, a promise which was enforced even though the vehicle was otherwise forfeitable. Here, no promise not to forfeit the house was given; the question is whether a premature forfeiture precludes a subsequent forfeiture if proper.

ney failed to pursue some of the points raised above in state court. One reason for petitioner's advancing such an argument may be to circumvent what might otherwise be a state court procedural default or failure to exhaust state remedies which might bar his present claim based on the plea agreement under 28 U.S.C. 2254(b) and case law. See Marcus, "Federal Habeas Corpus After State Court Default," 53 Fordham L Rev 663 (1985).

Petitioner's assault on his conviction because of the plea imbroglio being without merit, there was no censurable ineffective assistance of counsel, and had there been any it would have had no effect on federal rights. Since I deny the petition on the merits, the exhaustion or default issues need not be considered under 28 U.S.C. § 2254(b).

Another consequence of the ineffective assistance claim is to challenge petitioner's attorney's decision not to seek to reinstate the original plea agreement after its vacatur but prior to trial. This argument assumes that the prosecutor was bound to agree to reinstate the original plea agreement even after it was independently vacated by the state court over the prosecutor's objection. It also assumes that petitioner's decision to go to trial was not intelligently made with proper legal advice, perhaps based on the same view taken by petitioner in his present petition, that there was no significant (because no substantial direct) evidence against him.

## VIII

Petitioner asserts that uncharged evidence was improperly introduced and that variances of the indictment were permitted. He does not claim that an adjournment to avoid surprise due to lack of notice was requested and denied.

The issue before me is whether or not a federal constitutional violation combined with prejudice to petitioner has occurred. I need not determine whether or not the evidence or variances would have been permissible in federal criminal practice. See *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Nor am I called upon to determine whether or not state law was violated. *People v. Ventimiglia*, 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981). No federal constitutional violation has been established.

SO ORDERED.