**UNITED STATES of America,**

v.

**Michael CARUSO, Defendant.**

**No. S2 92 Cr. 396 (VLB).**

United States District Court,
S.D. New York.

March 5, 1993.

Benjamin E. Rosenberg, Asst. U.S. Atty., New York City, for U.S.

Wallace Musoff, Orenstein Musoff & Orenstein, New York City, for defendant.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I

The defendant Michael Caruso has pleaded guilty to violation of 18 U.S.C. § 1084 concerning illegal use of interstate wires for wagering and gambling. Under U.S. Sentencing Guidelines § 2E3.2, the base offense level for this crime is 12, with a three-level enhancement for acting in a managerial capacity and a two-level reduction for acceptance of responsibility, leading to a total offense level of 13, with a criminal history of I. This would, if not departed from, yield a sentencing range of 12 to 18 months' imprisonment. The parties agreed in connection with a plea bargain not to request departure from the Guidelines, and have honored that promise.

I have departed downward, however, for the reasons set forth below and have sentenced the defendant to probation for three years including six months of home confinement barring him from leaving home except to go to work, to church or to doctors' offices and with advance approval of his probation officer. A special assessment of $50 has been imposed.

II

Caruso is a 66 year old man whose gambling activities appear to have been primarily confined to events occurring at his coffee shop and to have produced an income to him of approximately $25,000 annually (an estimate the United States does not challenge). There is no indication that his gambling activities were part of any syndicate, racketeering enterprise, or large-scale operation of any kind. He served for two years in the United States Navy during the Second World War and was honorably discharged in 1946, receiving Good Conduct Service and Pacific Service awards.

In 1984, Caruso underwent an operation for right indirect inguinal hernia and in 1986 one to correct a senile cataract in his left eye, which still causes him some problems. In 1989 he suffered a heart attack leading to

hospitalization for ten days and requiring continued prescription of Cardizem.

For approximately four years, Caruso has been employed as a parking lot attendant and bus driver, receiving commendation from his employer for faithful service. The United States makes no contention that Caruso is likely to continue to engage in illegal activities.

## III

In the Sentencing Guidelines (Nov. 1, 1992) chapter Two sets forth the materials with respect to "Offense Conduct"; Part E pertains to "Offenses Involving Criminal Enterprises and Racketeering." Under this heading, § 2E3 refers to Gambling.

Recognizing the importance of involvement in criminal enterprises and racketeering as opposed to individualized small-time gambling, the Introductory Commentary to the gambling subsection of Part E (p. 117) states:

> "This subpart covers a variety of proscribed conduct. The adjustments in Chapter Three, Part B (Role in the Offense) are particularly relevant in providing a measure of the scope of the offense and the defendant's participation."

The Guidelines with respect to "Mitigating Role" (3B1.2 (p. 244)) deal with those who play a minimal or minor role in criminal activity (subdivision a, b).

Section 3B1.2 takes no account of the relative magnitude of the criminal activity involved. Here we are dealing with one who was the chief participant in the activity actually involved in the case, where that activity was itself of a small magnitude, indicated here by income of only $25,000, which is minute compared to amounts involved in any significant illegal gambling operation.

The Introductory Commentary indicates that the court is to resort to "Role in the Offense" (Chapter Three, Part B) as providing a measure of the "scope of the offense and the defendant's participation," but such measure cannot be derived from § 3B1.2 when the small-time operator is the entrepreneur in a small operation rather than a subordinate.

Thus the "Role in the Offense" Guideline, § 3B1.2 fails to encompass the objective set forth in the Introductory Commentary with respect to gambling in the context of this case. This requires departure pursuant to 18 U.S.C. § 3553(b) where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" as determined from the "sentencing guidelines, policy statements, and official commentary ..."

Weight must be given, as stated in § 3553, to both the degree and kind of information not foreseen in the Guidelines provision involved, here § 3B1.2. Departure on such grounds is an essential part of the sentencing scheme intended and enacted by Congress. *United States v. Merritt,* 988 F.2d 1298 (2d Cir.1993); Freed, "Federal Sentencing in the Wake of Guidelines: Unacceptable Limits on the Discretion of Sentencers," 101 Yale L.J. 1681 (1992).[1]

The primary congressional concern in enacting laws restricting use of interstate communication facilities in connection with illegal gambling was with the corrupting influence of organized illegal gambling operations. See, e.g., *United States v. Marquez,* 449 F.2d 89 (2d Cir.1971).

Congress has indeed approached the problem of regulating gambling abuse by invok-

---

1. The departure concept when properly implemented avoids the constitutional question which would be raised by a risk that rigid sentencing could make federal law unjust and partial in a way requiring judicial correction pursuant to Article III of the Constitution as intended by the Framers. As noted by Alexander Hamilton in *The Federalist* No. 78:

    "... it is not with a view to [direct] infractions of the Constitution only, that the independence of the judges may be an essential safeguard against the effects of occasional ill humors in the society. These sometimes extend no farther than to the injury of the private rights of particular classes of citizens, by unjust and partial laws. Here also the firmness of the judicial magistracy is of vast importance in mitigating the severity and confining the operation of such laws."

ing its constitutional authority under Article I, § 8, clause 3 to regulate commerce among the several states and with foreign nations. There is no indication, however, that Congress was concerned to any significant extent with localized individual activities on a small scale such as those of the defendant here. Such federal prosecutions are justified only because small-scale gambling may have a significant impact in the aggregate.[2] Prosecutions such as this one, whether pursued at the state or federal level, are important chiefly to avoid creating the perception or reality that only big-time gambling is illegal. This would, of course, encourage disrespect for, and disregard of, laws on the subject, in turn facilitating large-scale organized illegal gambling with well-recognized consequences in the form of corruption, use of threats or violence to collect gambling debts incurred by those wagering on credit, and tax evasion.

Certainly there is a secondary objective of putting some restraint on even small-scale gambling through federal action where local enforcement is deemed inadequate. This does not require, however, that the *de minimis* nature of an individualized non-organized, non-racketeering infraction be ignored where the defendant has made relatively little money, is elderly and infirm, and will be subjected to strict restraints on his activities which I find will assure that his gambling activities are solely in the past. The Sentencing Guidelines for gambling indeed indicate that the scope of the infraction should be considered. I find that in the circumstances here, deterrence will be achieved by the conviction itself and the restraints imposed.

### IV

In addition, although the defendant's age, military service, medical problems, good employment record, and likely future compliance with the law might not individually justify departure, the totality of these circumstances represent ground for downward departure here, where "several characteristics,

in combination, were not adequately taken into account by the Sentencing Commission in formulating the Guidelines." *United States v. Cotto,* 793 F.Supp. 64, 66 (E.D.N.Y. 1992).

SO ORDERED.

---

**2.** See *Fry v. United States,* 421 U.S. 542, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975); *Russell v. United States,* 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985); *Polish National Alliance v. NLRB,* 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509 (1944); *NLRB v. Fainblatt,* 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014 (1939); see also *United States v. Ricciardi,* 357 F.2d 91 (2d Cir.), *cert. denied* 384 U.S. 942, 86 S.Ct. 1464, 16 L.Ed.2d 840 (1966).