**Joseph PLATANO, Individually and on behalf of the Estate of Raymond Platano, Plaintiff,**

v.

**NORM'S CASTLE, INC., VFW Putnam Lake Post # 9257, Frank Meyer, Daniel Ledley and Brian Ledley, Defendants.**

No. 93 Civ. 0380 (VLB).

United States District Court, S.D. New York.

Sept. 13, 1993.

Richard Greenblatt, Greenblatt & Winslow, Newburgh, NY, for plaintiff.

John P. Flaherty, Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger, Garden City, NY, for defendant Norm's Castle.

Laurence J. Lebowitz, Meiselman, Farber, Packman & Eberg, Mt. Kisco, NY, for defendants VFW Putnam Lake Post and Frank Meyer.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

This case presents questions of the proper treatment of tragic incidents involving alleged service of alcohol in New York to ine-

briates whose driving brings about deaths in neighboring states.

Plaintiff's decedent (the "victim"), driving in Connecticut, was struck and killed by an intoxicated driver who was allegedly served liquor by Norm's Castle and VFW Putnam Lake Post # 9257 (the "institutional defendants") and the individual defendants in New York.[1]

Jurisdiction is based on diversity of citizenship pursuant to 28 USC 1332. The defendants are concededly citizens of New York. Plaintiff, the decedent's executor, has filed an affidavit stating that the decedent was a Connecticut domiciliary with intent to reside in Connecticut for an indefinite period, and more specifically had been a student at Danbury High School and Western Connecticut State University in Danbury, Connecticut, and was employed at Deep Markets, Danbury, at the time of his death.

The parties have filed opposing motions and cross-motions seeking determination of the applicability of New York or Connecticut law with respect to Dram Shop liability of those serving the liquor and with respect to the nature of damages for wrongful death.

The principal distinction with respect to damages is that in addition to monetary losses to the survivors, Connecticut's wrongful death statute, unlike that of New York, permits recovery for loss of enjoyment of life on the part of the decedent. In wrongful death cases New York permits prejudgment interest.

For the reasons which follow, I dispose of the pending motions as follows: The New York Dram Shop Law (Gen.Oblig.Law 11–101) is applicable to determination of liability as against all defendants; under that statute, this action is not time barred. Connecticut law applies to calculation of damages for wrongful death against the institutional defendants. I deny without prejudice the motions for determination of the law applicable to calculation of wrongful death damages as against the individual defendants.

1. The docket clerk is directed to restate the caption of this case to conform to that at the head of

## II

New York is the forum for this litigation, and hence its law determines the applicable choice of law rules unless this would be contrary to federal law or the Constitution. Under New York law, the court, in determining which law to apply to any particular issue of law or aspect of a case, looks to the state with the greatest interest in that given issue of law or aspect. In particular, New York choice of law concepts point to the law of a state where wrongful acts occurred, not necessarily where resulting injury was received. *Cooney v. Osgood Machinery*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993); *Schultz v. BSA*, 65 N.Y.2d 189, 198, 491 N.Y.S.2d 90, 95–96, 480 N.E.2d 679, 683–85 (1985); *Babcock v. Jackson*, 12 N.Y.2d 473, 484, 240 N.Y.S.2d 743, 752, 191 N.E.2d 279, 285–86 (1963). This indicates that New York's own law, designed to regulate the flow of liquor within its own boundaries, should apply to an alleged violation of its statute dealing with such matters.

## III

The applicable statute of limitations is determined by the state with the greatest interest in the matter. *Martin v. Julius Dierck Equipment Co*, 52 A.D.2d 463, 384 N.Y.S.2d 479, 482 (2d Dept.1976), *aff'd without discussion of this point* 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978). Here, the state with the greatest interest is New York. It is the regulating state, enacting and enforcing its Dram Shop Act, for the purpose of seeking to limit hazardous distribution of liquor within its borders. A three year statute of limitations is applicable to the New York's Dram Shop Act pursuant to CPLR 214 since it creates a new liability not drawn from common law. *Bongiorno v. D.I.G.I., Inc.*, 135 Misc.2d 516, 515 N.Y.S.2d 969, 970 (Sup.Ct.1987). Since the three year limitation is applicable, the current suit is timely.

## IV

The interest analysis with respect to damages is more complex. Connecticut has

this memorandum order.

an interest in calculating recompense to its citizens for wrongful death inflicted through drunken driving within Connecticut's own borders. New York has an interest in controlling enforcement of its Dram Shop Act. The use of other states' damage rules in applying the New York statute, of course, modifies that statute and enhances or blunts its application.

Because New York law as to liability controls, it is logical to hold that New York law, and not that of Connecticut, determines what measure of damages should be applied to violation of New York's Dram Shop Act. The key elements in reaching this conclusion are the purposes of the Dram Shop Act, since New York courts look to the underlying purposes of statutes in determining their interpretation where not specifically mandated by express language. See *Tedla v. Ellman*, 280 N.Y. 124, 19 N.E.2d 987 (1939).

According to *Bartlett v. Grande*, 103 A.D.2d 671, 481 N.Y.S.2d 566, 566–67 (4th Dept.1984), the purposes of the Dram Shop Act are:

> (1) to deter tavern owners and those in their employ from selling alcoholic beverages to intoxicated persons; (2) to provide a remedy to persons injured as a result of the sale of liquor under circumstances prohibited by the statute.

See also Note, 31 Duq.L.Rev. 671 (Spring 1993).

█ New York's interest in providing a remedy suggests that under New York's choice of law rules, among the states with relevant interests, the law of that state with the more effective remedy should be chosen, provided that remedy provided by that state's law is not so disproportionate as to exaggerate the consequences of violation to the point of substantial distortion of the impact of the regulatory statute.[2]

█ New York's interest in deterrence likewise points toward application of a sister state's damage calculations if more effective

deterrence can be achieved by applying the law of a state where an accident resulting from the violation occurred. This would be so if that state's law provides more generous recovery (as seems to be the case with Connecticut in this instance). See generally Day, "Solution for Conflict of Laws Governing Fraudulent Transfers: Apply the Law That Was Enacted to Benefit the Creditors," 48 Business Lawyer 889 (ABA May 1993).

Drunk drivers do not respect state lines. Each state is necessarily aware that irresponsible sale of liquor to inebriates within that state can lead to deaths across state lines. Respect for the national interests of interstate commerce, which are also the interests of each state, suggests that the rules in effect where the ultimate harm occurs should measure the monetary consequences that flow from disregard of risks by those irresponsibly providing liquor. The importance of comity with other members of the federal system is acknowledged by New York policy, as expressed in NY State Administrative Procedure Act 206 (seeking uniformity of regulations).

This leaves open the question of who is able to be deterred from selling alcoholic beverages to intoxicated persons. Clearly tavern owners can, and hence the institutional defendants are subject to Connecticut's measure of damages.[3]

## V

█ *Bartlett* makes it clear that some persons in the employ of tavern owners may be responsible under the Dram Shop Act, with its deterrence objective, if they control the flow of liquor. If an individual employee has little or no independent discretionary authority and has no interest in increasing sales to inebriated customers by reason of receipt of a share of the take, imposing harsh consequences on such a minor figure may serve no purpose under the Act as defined in *Bartlett*, provided a solvent institutional enti-

---

2. Treating what would be a minor infraction in one state as triggering enormous penalties if the effect is felt across a state line would be inappropriate, but is not involved here.

3. Monetary compensation for loss of enjoyment of life under Connecticut law can be determined separately from other pecuniary damages should this case proceed to trial. This would avoid the need for relitigation should it later be determined that such damages were inappropriate.

ty is a defendant in the case. See *United States v. Caruso,* 814 F.Supp. 382 (S.D.N.Y. 1993).

Indeed, under such circumstances, retention of such individual defendants in the case may provide no likelihood of additional recompense to a plaintiff, but will run counter to the objectives of Fed.R.Civ.P. 1, sentence 2 (the just, speedy and inexpensive determination of every action) as well as those of the Judicial Improvements Act of 1990, Public Law 101–650, 104 Stat. 5089, enacting 28 USC 473. See *Archer v. Globe Motorists Supply Co,* 1993 WL 187913, 1993 U.S.Dist. LEXIS 7162 (S.D.N.Y.1993).

Plaintiff is directed to consider whether retention of the individual defendants in this case serves a valid purpose. If the answer in plaintiff's view is affirmative, submissions should be filed indicating how the individual defendants were compensated in connection with sales of liquor, what control the individual defendants exercised with regard to policy as to what kinds of persons should be served, and whether the institutional defendants are able to respond to any judgment which might be entered against them.

## VI

Based on the rulings in this memorandum order, the parties are directed to discuss settlement of this case and to report within one month from the date of this memorandum order concerning progress made.

SO ORDERED.